UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN H. LIBAIRE,

                                        Plaintiff,                    REPORT AND
                                                                      RECOMMENDATION

                    -against-                                        CV 06-1500 (DRH) (ETB)

MYRON KAPLAN, JANET KRUDOP, NORTH
FORK PRESERVE, INC. and NORTH FORK
PRESERVE, CO.,

                                        Defendants.
------------------------------------------------------------------------X

TO THE HONORABLE DENIS R. HURLEY, UNITED STATES DISTRICT JUDGE:

        Plaintiff, John H. Libaire ("Libaire"), commenced this action on March 31, 2006,

asserting causes of action for securities fraud, pursuant to Section 10(b) of the Exchange Act of

1934,[1] 15 U.S.C. § 78j (the "Exchange Act"), and Rule 10b-5 of the Securities and Exchange

Commission ("SEC"), promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), as well as

common law fraud and breach of fiduciary duties.  (Compl. ¶ 1.)  Plaintiff alleges that defendants

made certain material misrepresentations, which induced plaintiff to purchase securities in North

Fork Preserve, Inc. ("NFP, Inc."), a private, members-only hunting preserve, and on which

plaintiff relied to his detriment.  (Id.)  Specifically, plaintiff alleges that defendants, Myron

Kaplan ("Kaplan"), Janet Krudop, NFP, Inc., and North Fork Preserve Co. ("NFP, Co.")

(collectively referred to as "defendants") falsely represented that NFP, Inc. "would operate in the

_____

        [1] Plaintiff's Complaint erroneously states that relief is sought pursuant to the "Exchange
Act of 1933."  (Compl. ¶ 1.)  However, this Act is actually referred to as the "Exchange Act of
*1934*."  15 U.S.C. § 78a (emphasis added).  The act enacted in 1933 is commonly referred to as
the "Securities Act of 1933."  15 U.S.C. § 77a.

-1-

ordinary course of business" in order to induce plaintiff to purchase a security in NFP, Inc. and that "purchase of that security would allow plaintiff to use NFP[, Inc.] for hunting during the 2005 Long Island hunting season." (Id. ¶ 2.) Plaintiff asserts that NFP, Inc. was not operated in the ordinary course of business and was inadequate as a hunting preserve in 2005, thereby rendering his purchased security "worthless." (Id.) Plaintiff seeks damages, injunctive relief and specific performance.

Before the court is the defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Defendants also move for sanctions against plaintiff, as well as his counsel, Mitchell A. Stein ("Stein"), pursuant to Federal Rule of Civil Procedure 11 and the Private Securities Litigation Reform Act ("PSLRA"), for commencing a frivolous securities fraud action.

For the following reasons, I recommend that summary judgment be granted in favor of defendants, dismissing plaintiff's complaint in its entirety. I further recommend that defendants be awarded sanctions against both plaintiff and his counsel, pursuant to the PSLRA, in an amount equal to the reasonable attorney's fees and costs incurred by defendants in defending the instant action.

FACTS

In or around 1981, Myron Kaplan and Robert Krudrop ("Krudop") purchased 333 acres of vacant land in Riverhead, New York to develop and be used as a private hunting preserve. (Decl. of Myron Kaplan, dated Nov. 10, 2006 ("Kaplan Decl."), ¶ 13.) In April 1982, Kaplan and Krudop formed a partnership, NFP, Co., which obtained permission to subdivide the 333

acres of vacant property into two parcels, one containing 133 acres and the other containing 200 acres.  (Id. ¶ 14; Compl. ¶ 27.)  In June 1982, Kaplan and Krudop formed NFP, Inc., a New York corporation.  (Kaplan Decl. ¶¶ 4, 15.)  By agreement thereafter, NFP, Co. conveyed the 200-acre parcel of property to NFP, Inc. in exchange for seventy-five (75) shares in NFP, Inc., as well as other consideration.  (Id. ¶ 15; Compl. ¶ 29.)  NFP, Co. retained title to the remaining 133 acres of vacant land, which it leased to NFP, Inc. for an amount equal to its carrying costs.  (Kaplan Decl. ¶ 16.)

In order to fund the development of the hunting preserve, NFP, Inc. issued a private offering (the "Offering"), by which it sold seventy-five (75) shares of common stock in NFP, Inc. at a cost of $10,000 per share, which raised $750,000 in capital.  (Id. ¶ 17; Compl. ¶ 30.) The terms and conditions of the Offering were detailed in a Private Offering Memorandum, dated July 12, 1982, which was subsequently amended on several occasions.  (Kaplan Decl. ¶ 17 and Ex. G and H, annexed thereto; Compl. ¶ 30.)  The Offering became effective in June 1984 and NFP, Inc. thereafter began to operate as a private hunting preserve for the benefit of its members/shareholders.  (Kaplan Decl. ¶ 18.)  Since its inception, NFP, Inc., has operated as a members-only hunting preserve, (Id. ¶ 4; Compl. ¶ 19), in which shareholders pay annual membership dues in exchange for use of the facilities.  (Kaplan Decl. ¶ 4.)  NFP, Inc.'s Board of Directors sets the amount of membership dues to be paid by the members/shareholders on an annual basis.  (Id.)

On or about January 12, 1988, plaintiff purchased a single share of common stock in NFP, Inc. for $12,500.  (Id. ¶ 19; Decl. of Janet Krudop, dated Nov. 10, 2006 ("Krudop Decl."), ¶ 2; Decl. of John Libaire, dated Jan. 18, 2007 ("Libaire Decl."), ¶ 1.)  In connection with this

purchase, plaintiff signed a Subscription Agreement and Questionnaire and tendered a check in the foregoing amount. (Kaplan Decl. ¶ 19 and Ex. C, annexed thereto; Krudop Decl. ¶ 5.) Plaintiff also served as a Director of NFP, Inc., along with Kaplan and Krudop, from 1994 to 1997 and was also a member of NFP, Inc.'s Finance Committee during that time. (Kaplan Decl. ¶ 19 n.5; Krudop Decl. ¶ 2; Libaire Decl. ¶ 17.)

In November 2004, the minority shareholders of NFP, Inc. commenced an action in New York Supreme Court against Kaplan, the Estate of Robert Krudop, Janet Krudop, NFP, Co. and NFP, Inc. (the "State Court Action"), alleging causes of action pursuant to New York Business Corporation Law § 626 (a shareholders' derivative action) and New York Business Corporation Law § 720 (against the directors and officers of NFP, Inc. for misconduct), based on allegations of waste, fraud, misconduct, corporate mismanagement and breach of fiduciary duty by the defendants. (Kaplan Decl. ¶ 33 and Ex. D, annexed thereto.) Libaire is a plaintiff in the State Court Action as well. (Id.) Plaintiffs in the State Court Action seek damages as well as the following injunctive relief: (1) to remove Kaplan and Janet Krudop from NFP, Inc.'s Board of Directors; (2) the appointment of a temporary trustee to manage NFP, Inc. until a new Board of Directors and officers could be elected; (3) injunctive relief preventing defendants from selling their shares in NFP, Inc. or the property thereof; and, (4) an order directing the immediate seizure of NFP, Inc.'s books and records. (Id. ¶ 34 and Ex. D, annexed thereto.) Although plaintiffs' requests for a temporary receiver and preliminary injunctive relief were granted, by order dated June 9, 2005, many of plaintiffs' allegations in the State Court Action were dismissed as either time-barred or without legal merit. (Id. ¶ 35 and Ex. L, annexed thereto.)

Defendants moved to stay enforcement of the New York Supreme Court's June 9, 2005

decision pending appeal, which was granted by the Appellate Division on July 20, 2005. (Id. ¶ 37 and Ex. M, annexed thereto.) In issuing the stay, the Appellate Division authorized the Board of Directors (i.e., Kaplan and Janet Krudop) to continue to operate NFP, Inc. "only in the ordinary course of business" and stayed the appointment of a temporary receiver. (Ex. M.) The Appellate Division ultimately upheld the dismissals issued by the trial court and further dismissed certain other allegations that the trial court had failed to dismiss. (Id. ¶¶ 35, 38 and Ex. N, annexed thereto.)

By order dated July 5, 2006, the Appellate Division reversed the trial court's appointment of a temporary receiver, finding that such relief was not warranted under the facts presented, and, after finding the scope of the preliminary injunction too broad, modified it to allow the Board of Directors to continue to operate NFP, Inc. and to use the property of NFP, Inc. "only in the ordinary course of business." (Ex. N.) The remaining claims in the State Court Action are still pending.

While the appeal in the State Court Action was pending, plaintiff instituted the within action, alleging that defendants committed securities fraud in connection with the payment of plaintiff's annual dues in 2005, which, plaintiff asserts, was actually the purchase of a second, preferred, security in NFP, Inc. (Libaire Decl. ¶ 1.) Plaintiff alleges that he is required to purchase this preferred security each year in order to maintain his interest in NFP, Inc. pursuant to the common stock he purchased in 1988. (Id.) Plaintiff further alleges that failure to pay annual dues may result in forfeiture of his share of stock in NFP, Inc. due to the existence of a

corporate lien on each shareholder's shares.[2]  (Id. ¶ 8 n.3.)  According to plaintiff, the existence

of the corporate lien creates two separate securities - common and preferred - and "[t]he annual

purchase is a preferred security because the annual purchase takes preference over any NFP[,

Inc.] security, including NFP[, Inc.] common stock."  (Id. ¶ 1 n.1.)  For this reason, plaintiff

asserts that his "2005 payment of annual dues qualifies as a security."  (Id. ¶ 1.)  Defendants

dispute plaintiffs characterization of NFP, Inc.'s stock and assert that the "only stock issued by

NFP, Inc. is common stock evidenced by a share certificate recorded on the books and records of

NFP[, Inc.]" (Decl. of Janet Krudop, dated Mar. 23, 2007 ("Krudop II Decl."), ¶ 3.)  Defendants

maintain that NFP, Inc. does not issue, nor has it ever issued, "preferred stock."  (Id.)


## DISCUSSION

I.    Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be

rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see

also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to

establish the lack of any factual issues.  See Celotex, 477 U.S. at 323.  The very language of this

---

[2]  Article V, Section 3 of NFP, Inc.'s Corporate By-laws states that NFP, Inc. has a
corporate lien on the shares of each shareholder "for all indebtedness and obligations owing and
to be owing by such shareholder to the corporation for annual dues or otherwise."  (NFP, Inc.'s
By-laws, Art. V, § 3, annexed as Ex. 1 to Libaire Decl. and Ex. F to Kaplan Decl.)

standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.


II.     Plaintiff's Securities Fraud Claim is Time-Barred

To establish liability under Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff

must demonstrate "that [1] in connection with the purchase or sale of a security the defendant, [2] acting with scienter, [3] made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device," SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996).  A claim for securities fraud pursuant to Section 10(b) "must be 'in connection with' a purchase or sale of securities . . . rather than their mere holding or retention," Ingenito v. Bermec Corp., 376 F. Supp. 1154, 1170 (S.D.N.Y. 1974) (quoting Birnbaum v. Newport Steel, 193 F.2d 461 (2d Cir. 1952)), a doctrine which has been "consistently reaffirmed by courts in this and other circuits."  Ingenito, 376 F. Supp. at 1174 (citing cases).  Moreover, breaches of fiduciary duty or "corporate mismanagement" do not rise to the level of securities fraud under Section 10(b).  Santa Fe Indus. v. Green, 430 U.S. 462, 476, 479 (1977); Luce v. Edelstein, 802 F.2d 49, 55 (2d Cir. 1986) (upholding district court's finding that "allegations of mismanagement do not state a claim under Section 10(b)").

Federal securities claims instituted pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 of the SEC Rules must be brought within one year of the discovery of the facts underlying the alleged violation, but in no event more than three years after the alleged violation itself.  See 15 U.S.C. § 78i(e); see also Levitt v. Bear Stearns & Co. Inc., 340 F.3d 94, 101 (2d Cir. 2003) (citing Lamp, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991)); Kaplan v. Lazard Freres & Co., LLC, Nos. 00-7243, 00-7269, 2000 WL 1644004, at *3 (2d Cir. Oct. 31, 2000) (same); Dodds v. Cigna Secs., Inc., 12 F.3d 346, 349 (2d Cir. 1993) (same) (additional citation omitted).  Suits commenced outside of this statute of limitations must be dismissed as time-barred.  See, e.g., Kaplan, 2000 WL 1644004, at *3 (dismissing plaintiff's securities fraud claims as time-barred where action commenced outside the one year statute of

limitations).

Here, it is undisputed that plaintiff purchased his one share of common stock in NFP, Inc. on January 12, 1988, approximately eighteen (18) years prior to the commencement of this action. (Kaplan Decl. ¶ 19; Krudop Decl. ¶ 2; Libaire Decl. ¶ 1.) This purchase is clearly beyond the one year/three year statute of limitations for a claim under Section 10(b) and Rule 10b-5.

Accordingly, plaintiff's cause of action for securities fraud is time-barred and I recommend that summary judgment be granted to defendants.

III.     The Purchase of Annual Dues is Not a Security

Plaintiff attempts to circumvent the statute of limitations for claims brought pursuant to Section 10(b) and Rule 10b-5 by asserting that his payment of annual dues in 2005 was the purchase of a second, preferred, security in NFP, Inc. and therefore a claim of securities fraud in connection with this purchase is timely. Curiously, plaintiff fails to offer a single case from any jurisdiction to support his position that the payment of membership dues constitutes a "security" within the meaning of the Exchange Act. Nor did independent research produce any legal authority to support such a claim. Accordingly, as discussed below, I find plaintiff's argument completely without merit and recommend that summary judgment be granted to defendants.

The Exchange Act defines a "security" as follows:

> any note, stock, treasury stock, security feature, bond, debenture,
> certificate of interest or participation in any profit-sharing agreement
> or in any oil, gas or other mineral royalty or lease, any collateral-trust
> certificate, preorganization certificate or subscription, transferable share,
> investment contract, voting-trust certificate, certificate of deposit for a
> security, any put, call, straddle, option, or privilege on any security,

> certificate of deposit, or group or index of securities (including any
> interest therein or based on the value thereof), or any put, call, straddle,
> option, or privilege entered into on a national securities exchange relating
> to foreign currency, or in general, any instrument commonly known as
> a "security"; or any certificate of interest or participation in, temporary
> or interim certificate for, receipt for, or warrant or right to subscribe to
> or purchase, any of the foregoing.

15 U.S.C. § 78c(a)(10).  Such a definition is intentionally broad "'so as to include within the definition the many types of instruments that in our commercial world fall within the ordinary concept of a security.'"  United Housing Found. v. Forman, 421 U.S. 837, 847-48 (1975) (quoting H.R. Rep. No. 85, 73d Cong., 1st Sess., 11 (1933)).  As instructed by the United States Supreme Court, "in searching for the meaning and scope of the word 'security' in the [Securities and Exchange Acts], form should be disregarded for substance and the emphasis should be on economic reality."  Tcherepnin v. Knight, 389 U.S. 332, 336 (1967).

In determining whether a particular instrument is a "security," courts employ a three-part "economic reality" test, established by two Supreme Court cases, United Housing Foundation v. Forman, 421 U.S. 837 (1975) and SEC v. W.J. Howey Co., 328 U.S. 293 (1946).  See Golden v. Garafalo, 678 F.2d 1139, 1141 (2d Cir. 1982).  To be considered a security, there must be "(1) an investment in a common venture, (2) premised on a reasonable expectation of profits, (3) to be derived from the entrepreneurial or managerial efforts of others."  Golden, 678 F.2d at 1141 (citing Forman, 421 U.S. at 852 and Howey, 328 U.S. at 301).  The payment of annual dues in connection with membership in a private organization does not satisfy any part of the aforementioned test.

With respect to the first element, an investment in a common venture, it is undisputed that plaintiff's acquisition of a single share of common stock in 1988 - although time-barred for

purposes of a securities claim - constituted an "investment" for such purposes. The payment of

annual dues, however, does not, and, as noted above, plaintiff fails to offer a single case to

support such a proposition. Rather, the payment of annual dues is an obligation of membership,

imposed pursuant to NFP, Inc.'s corporate By-laws,[3] in exchange for the use and enjoyment of

the facilities of NFP, Inc. and the hunting preserve. Plaintiff does not allege that he was issued a

stock certificate in exchange for his payment of dues in 2005. Nor does he allege that he

received any greater ownership or voting rights in NFP, Inc., other than what he already

maintained through the purchase of his single share of common stock in 1997. Moreover,

plaintiff does not allege that he tendered the 2005 dues in exchange for anything other than the

use and enjoyment of the facilities and the hunting preserve. Such a payment simply cannot be

considered an "investment in a common venture."

In addition, plaintiff could not reasonably have expected to earn a profit from his

payment of annual dues. Nor does he even allege as much in his Complaint. The Supreme Court

has defined "profits" in the context of the <u>Howey</u> test as "either capital appreciation resulting

from the development of the initial investment . . . or a participation in earnings resulting from

the use of investors' funds." <u>Forman</u>, 421 U.S. at 852. The Court further explained that "[i]n

such cases, the investor is 'attracted solely by the prospects of a return' on his investment." <u>Id.</u>

(quoting <u>Howey</u>, 328 U.S. at 300). "By contrast, when a purchaser is motivated by a desire to

use or consume the item purchased . . . the securities laws do not apply." <u>Forman</u>, 421 U.S. at

---

[3] NFP, Inc.'s By-laws provide as follows: "Each and every share issued by the Corporation after August 1, 1986 shall be deemed a "dues-paying share" and the owner (or its assignee) shall be obligated for membership dues on said share . . . ." (NFP, Inc.'s By-laws, Art. IV, § 4, annexed as Ex. F to Kaplan Decl. and Ex. 1 to Libaire Decl.)

852-53.

Plaintiff's payment of annual dues was for the sole purpose of having access to the hunting preserve and for the use and enjoyment of the club facilities. Plaintiff never expected to receive a profit in exchange for such a payment, as evidenced by his failure to even plead as much in his Complaint. By tendering the annual dues in 2005, plaintiff was not looking for a "return on his investment," but rather sought to maintain his access to the hunting preserve and club facilities. Such an expectation does not meet the requirements of the <u>Howey</u> test.

Plaintiff attempts to remedy his failure to plead an expectation of profits in exchange for the payment of dues in 2005 by stating in his declaration in opposition to defendants' motion for summary judgment that in connection with his payment of annual dues in 2005, he possessed the "expectation that use of the 'club' that year would help to bring in clients for me (which is critical to my livelihood) and a financial gain." (Libaire Decl. § 13.) While such an expectation may be true, it falls far short of fulfilling the "expectation of profits" element under <u>Howey</u>.

Finally, plaintiff asserts that the imposition by NFP, Inc. of a corporate lien on his single share of common stock transformed his payment of annual dues in 2005 into the purchase of a preferred security. Again, however, plaintiff fails to offer any case law in support of his position. Rather, plaintiff simply states that his "2005 purchase was of a preferred security," without providing any case law to support such an assertion. (Pl. Mem. of Law in Opp'n to Def. Mot. for Summ. J, 13.) According to plaintiff, due to the corporate lien on each share of common stock issued by NFP, Inc., which is established pursuant to NFP, Inc.'s By-laws, an owner of NFP, Inc. common stock is required to "make annual payments" (<u>i.e.</u>, membership dues) "in order to avoid forfeiture of his or her common stock." (<u>Id.</u>, 6.) According to plaintiff,

this annual payment "established two classes of NFP[, Inc.] securities - - common stock and preferred security." (Id.)

Article V, Section 3 of NFP Inc.'s By-laws provides as follows:

> The corporation shall at all times have a lien upon the shares owned by each shareholder, which shall be superior to all other liens, for all indebtedness and obligations owing and to be owing by such shareholder to the corporation for annual dues or otherwise. Unless and until such shareholder as member shall default in the payment of annual dues or assessments and/or unless and until such shareholder shall default in the payment of any indebtedness or obligation owing by such shareholder to the corporation otherwise arising, such shares shall continue to stand in the name of the shareholder upon the books of the corporation, and the shareholder shall be entitled to exercise the right to vote thereon as though said lien did not exist. The Board of Directors may refuse to consent to the transfer of such shares until any indebtedness of the shareholder to the corporation is paid. The corporation shall have the right to issue to any purchaser of such shares upon the enforcement by the corporation of such lien, or to the nominee of such purchaser after ten (10) days written notice to any such defaulting member to cure such default,[4] a certificate of the shares so purchased . . . .

(Kaplan Decl, Ex. F.) There is nothing in the above-quoted language that provides for the issuance of a preferred security in exchange for the payment of annual dues, as asserted by plaintiff. Moreover, as averred by Janet Krudop in her Reply Declaration, dated March 23, 2007, "[t]he only stock issued by NFP[, Inc.] is common stock . . . There is no other stock and NFP[, Inc.] has never issued any 'preferred stock.'" (Krudop II Decl., ¶ 3.) Article V, Section 3 of the By-laws simply provides for a corporate lien on each shareholder's shares of stock, which

---

[4] It should be noted that plaintiff erroneously asserts in his opposition papers that the NFP, Inc.'s By-laws do not provide "any opportunity [for a defaulting shareholder] to cure the defect." (Pl. Mem. of Law in Opp'n to Def. Mot. for Summ. J, 5.) This is clearly inaccurate as the By-laws explicitly state that a defaulting shareholder is to be provided with "ten (10) days written notice . . . to cure [the] default." (NFP, Inc.'s By-Laws, Art. V, § 3, annexed as Ex. F to Kaplan Decl. and Ex. 1 to Libaire Decl.)

NFP, Inc. is entitled to foreclose on should the shareholder fail to remit his or her dues. Nothing in the language of this section - or anywhere else in the By-laws - supports plaintiff's claim that the existence of this corporate lien, and the obligation to tender annual dues to prevent the foreclosure of this lien, created a second, "preferred," class of stock in NFP, Inc. Nor, as stated above, has plaintiff offered a single case to support such a characterization. Accordingly, such an assertion is patently without merit.

For the foregoing reasons, I recommend that the court find that the payment of annual dues in 2005 did not constitute the purchase of a security by plaintiff. Accordingly, any claim of securities fraud by plaintiff is time-barred and defendants' motion for summary judgment should be granted in its entirety.


III.     Plaintiff's Contention that Summary Judgment is Inappropriate Due to Lack of Discovery

Plaintiff contends that summary judgment is inappropriate in this action because no discovery has been conducted as of yet, despite plaintiff's purported requests for it. (Pl. Mem. of Law in Opp'n to Def. Mot. for Summ. J, 14-16.) Federal Rule of Civil Procedure 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that a party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for [summary] judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). Accordingly, a party seeking discovery "must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain

them, and (4) why the affiant was unsuccessful in those efforts." Hudson River Sloop

Clearwater, Inc. v. Dep't of the Navy, 891 F.2d 414, 422 (2d Cir. 1989) (citing Burlington Coat

Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir. 1985)).

Plaintiff's counsel, Stein, states in his declaration in opposition to defendants' motion

that discovery is necessary with respect to three areas:

> (1) the knowledge, actual or constructive, and scienter of defendants
> Kaplan and Krudop at the time Libaire purchased his preferred security
> in 2005;
>
> (2) whether defendants Kaplan and Krudop had a duty to the plaintiff to
> inform plaintiff as to the circumstances surrounding NFP[, Inc.] and its
> ability to operate in the ordinary course of business; and
>
> (3) information establishing what is NFP[, Inc.]'s ordinary course of
> business as well as information demonstrating whether or not
> defendants managed and operated NFP[, Inc.] in the ordinary course
> of business.[5]

(Decl. of Mitchell A. Stein, dated Jan. 18, 2007 ("Stein Decl."), ¶ 5.)  However, such areas of

information do not even properly apply to a claim for securities fraud but rather to one of

corporate mismanagement, which, as stated supra, cannot provide the basis for a securities fraud

claim.  See Santa Fe Indus., 430 U.S. at 476, 479; Luce, 802 F.2d at 55.  Moreover, Stein does

not state that this information is necessary to oppose the instant motion but rather "to elucidate

the genuine issue of material fact as to whether plaintiff has fully established a securities fraud

claim."  (Id. ¶ 6.)  It goes without saying that plaintiff - and Stein - should have determined

whether plaintiff was able to "fully establish" a  claim for securities fraud prior to commencing

---

[5]  In his declaration in opposition to the within motion, plaintiff also identifies twenty-three (23) "genuine issues of material fact" that he believes necessitate discovery.  (Libaire Decl. ¶ 17.)  It appears from a review of plaintiff's declaration that Stein incorporated these twenty-three (23) alleged issues of material fact into the above three broad categories.

this action.  The failure to do so, as discussed <u>infra</u>, is sanctionable.

In addition, while plaintiff is correct that no discovery has occurred, plaintiff omits the fact that he did not attempt to seek discovery until December 2006, nine months after he commenced this action and only after defendants filed their motion for summary judgment.[6] This is confirmed by letters written by Stein to defendants' counsel, Ronald Rosenberg, requesting that discovery proceed, which are dated December 20, 2006 and January 3, 2006,[7] respectively, and are offered in support of Stein's declaration in opposition to defendants' motion for summary judgment.  (Stein Decl., Exs. 1 and 2.)  Plaintiff offers no other evidence of any requests for discovery by him prior to this date.

Finally, even if plaintiff were afforded the opportunity to conduct discovery, such discovery would not yield a cognizable claim for securities fraud.  As discussed above, the only purchase of a security by plaintiff was in January 1988 and any purported claim of fraud in connection with this purchase is time-barred.  Moreover, there is no precedential support for plaintiff's assertion that the payment of annual dues in 2005 constitutes the purchase of a security and permitting discovery to go forward will not produce any.   Since plaintiff cannot establish the most basic requisite element for a claim of securities fraud, <u>i.e.</u>, the sale or purchase

---

[6]  In support of his claim that he is entitled to discovery, plaintiff cites to <u>Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 445 (2d Cir. 1980) for the proposition that where "the party opposing the motion has not been dilatory in seeking discovery, summary judgment should not be granted when he is denied reasonable access to potentially favorable information."  (Pl. Mem. of Law in Opp'n to Def. Mot. for Summ. J., 15.)  The undersigned does not see how plaintiff can possibly rely on such a contention where he failed to first seek discovery until nine months after the commencement of this action.  Such conduct is a prime example of dilatory behavior.

[7]  The undersigned assumes that plaintiff's counsel intended to date the second letter January 3, 2007 and that the use of "2006" was in error.

of a security within the applicable statute of limitations, I see no reason why discovery should be permitted here. To do so would be a waste of judicial resources and time as well as a further burden on defendants, who, as discussed <u>infra</u>, have already been subject to needless litigation by plaintiff.

Accordingly, given plaintiff's failure to seek any discovery whatsoever prior to December 2006, and his failure to sufficiently establish how discovery is likely to create a genuine issue of material fact here, the undersigned recommends that the lack of discovery be disregarded and that summary judgment be granted in favor of defendants.

IV.    <u>Plaintiff's State Law Claims of Common Law Fraud and Breach of Fiduciary Duty</u>

Having found that plaintiff's claim for securities fraud is time-barred, there is no federal jurisdiction over this action.   Although the court has the discretion to exercise supplemental jurisdiction over plaintiff's remaining state claims, <u>see</u> 28 U.S.C. § 1367(a), I recommend that it decline to do so and instead dismiss plaintiff's claims of common law fraud and breach of fiduciary duty without prejudice. Such claims are better addressed in the state forum. <u>See</u> 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").[8]

---

[8]  While it also appears that an argument could be made that the state law claims should be dismissed pursuant to the Colorado River Doctrine, <u>see</u> <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976) (establishing standards for discretionary abstention when federal and state courts exercise concurrent jurisdiction), due to the fact that the within claims are virtually identical to those pending in the state court action, <u>see</u> <u>Cadle Co. v. Cohen,</u>

V.    Defendants' Request for Sanctions

Defendants also seek sanctions against both plaintiff and his counsel, Stein, pursuant to Rule 11 of the Federal Rules of Civil Procedure as well as the PSLRA, on the grounds that plaintiff has filed a wholly frivolous securities fraud action.  Plaintiff and Stein oppose defendants' request, asserting that sanctions are inappropriate because plaintiff has established a cognizable claim for securities fraud and they have not been provided a "safe harbor," as required under Rule 11.  Defendants seek their attorney's fees incurred in defending this action as well as a substantial sanction to deter future conduct by plaintiff and his counsel.

A.    Rule 11 Sanctions

"Rule 11 sanctions are designed to deter baseless filings."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany, 369 F.3d 91, 97 (2d Cir. 2004) (citing Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 29 F.3d 259, 266 (2d Cir. 1994)).  Accordingly, a violation of Rule 11 is triggered "'when it appears that a pleading has been interposed for any improper purpose,'" Greenberg v. Chrust, 297 F. Supp. 2d 699, 703 (S.D.N.Y. 2004) (quoting Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985)), such as "to harass or to cause unnecessary delay or needless increase in the cost of the litigation," Fed. R. Civ. P. 11(b)(1), "'or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that a pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.'"  Greenberg v.

No. 98-7319, 1999 U.S. App. LEXIS 5210, at *5 (2d Cir. Mar. 22, 1999) (affirming district court's dismissal of action under Colorado River Doctrine where plaintiff "brought an action in federal court that was identical to a pending state court action in which it was also the plaintiff and in which it had suffered a setback"), since defendants have chosen not to raise this argument, the undersigned similarly declines to address it.

-18-

Chrust, 297 F. Supp. 2d 699, 703 (S.D.N.Y. 2004) (quoting Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985)); see also Fed. R. Civ. P. 11(b)(2).  Sanctions are appropriate under Rule 11 "where it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands."  Dujardin v. Liberty Media Corp., 359 F. Supp. 2d 337, 360 (S.D.N.Y. 2005) (citations and internal quotation marks omitted).  In determining whether sanctions are warranted, the test is whether the attorney's conduct was "objectively reasonable" at the time the pleading was signed.  Greenberg, 297 F. Supp. 2d at 703 (additional citation omitted).

The 1993 Advisory Committee Note to Rule 11 sets forth certain factors that may be considered by the court when deciding whether to impose sanctions or what sanctions are appropriate in the given circumstances.  Those factors include:

> (1) whether the improper conduct was willful, or negligent;
> (2) whether it was part of a pattern or activity, or an isolated
> event; (3) whether it infected the entire pleading, or only one
> particular count or defense; (4) whether the person has engaged
> in similar conduct in other litigation; (5) what effect it had on the
> litigation process in time or expense; (6) whether the responsible
> person is trained in the law; (7) what amount, given the financial
> resources of the responsible person, is needed to deter that person
> from repetition in the same case.

Kochisarli v. Tenoso, No. 02-CV-4320, 2006 WL 721509, at *8 (E.D.N.Y. Mar. 21, 2006) (citing Simpson v. Putnam County Nat. Bank of Carmel, 112 F. Supp. 2d 284, 291-92 (S.D.N.Y. 2000)); see also Fed. R. Civ. P. 11 advisory committee note to 1993 amendments.  "In addition, 'the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys

should certainly be taken into account in determining whether paragraph [b](2) [of Rule 11] has been violated.'" Simon Debartolo Group, LP v. The Richard E. Jacobs Group, Inc., 186 F.3d 157, 166 (2d Cir. 1999) (quoting Fed. R. Civ. P. 11 advisory committee note to 1993 amendments).

Finally, Rule 11 contains a "safe harbor" provision, which requires that, where sanctions are initiated by motion of a party, the motion is to be served on the allegedly offending party twenty-one (21) days before it is filed with the court. See Fed. R. Civ. P. 11(c)(1)(A); Storey v. Cello Holdings, LLC, 347 F.3d 370, 389 (2d Cir. 2003). This provision "gives the subject [of the motion] the opportunity to withdraw the potentially offending statements before the sanctions motion is officially filed." Storey, 347 F.3d at 389 (citing Fed. R. Civ. P. 11(c)(1)(A)). Compliance with Rule 11's safe harbor provision is mandatory such that the failure to do so will result in a denial of the sanctions motion. See, e.g., ESI, Inc. v. Coastal Corp, 61 F. Supp. 2d 35, 68 (S.D.N.Y. 1999) (denying motion for sanctions where moving party failed to comply with safe harbor provision); Banfield v. UHS Home Attendants, Inc., No. 96 Civ. 4850, 1997 WL 342422, at *3 (S.D.N.Y. June 23, 1997) (stating that procedural requirements are to be strictly construed and that failure to comply with safe harbor provision mandates denial).

B.      Sanctions Pursuant to the PSLRA

While courts are generally not obligated to make specific findings with respect to a party and it's counsel's compliance with Rule 11, or to impose sanctions once a violation is determined, this is no longer the case in the securities litigation context. See Simon Debartolo Group, 186 F.3d at 166. Rather, pursuant to the PSLRA, a "measure intended to put 'teeth' in Rule 11," was added to the Exchange Act, which requires courts, "at the conclusion of all private

actions arising under the Exchange Act, to make specific findings as to the compliance by all parties and attorneys with Fed. R. Civ. P. 11(b)." Id. (quoting H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730); see also 15 U.S.C. § 78u-4(c)(1) ("Section 21D(c)").  This section also makes the imposition of sanctions mandatory - as opposed to discretionary under Rule 11 - if the court concludes that a violation of Rule 11 has occurred and "adopts a rebuttable presumption that the appropriate sanction for a complaint that substantially fails to comply with Rule 11(b) 'is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action.'" Simon Debartolo Group, 186 F.3d at 167 (quoting 15 U.S.C. § 78u-4(c)(3)(A)(ii)).

The presumption, under the PSLRA, that an award of reasonable attorney's fees and costs is the appropriate sanction for a violation of Rule 11 may be rebutted where the violation is found to be de minimis.  See Gurary v. Nu-Tech Bio-Med, Inc., 303 F.3d 212, 221, 223 (2d Cir. 2002).  Alternatively, the presumption may also be rebutted where "financial statements or other relevant evidence" establish that "the full sanction award unjustly creates an unreasonable burden on the sanctioned party and that a partial award would not 'impose a greater burden on the party in whose favor sanctions are to be imposed.'"  Id. (quoting 15 U.S.C. § 78u-4(c)(3)(B)(I)).  Accordingly, upon a showing of either a de minimis violation or an unreasonable burden, "the presumption is rebutted and *full* sanctions are not warranted."  Gurary, 303 F.3d at 223 (emphasis in original).  Rule 11(c)'s safe harbor provision does not apply to a motion for sanctions pursuant to the PSLRA.  See De La Fuente v. DCI Telecomms., Inc., 259 F. Supp. 2d 250, 258 n.4 (S.D.N.Y. 2003) ("The PSLRA . . . does not incorporate the safe harbor provision contained in Rule 11(c).").

C.    <u>Plaintiff's Frivolous Complaint Warrants Sanctions Under the PSLRA</u>

In the within litigation, plaintiff, through his counsel, knowingly commenced a time-barred securities fraud action. As discussed above, the only security purchased by plaintiff from NFP, Inc. was in 1988 - approximately eighteen (18) years prior to the commencement of this action. Even if plaintiff himself was unaware that such a purchase is beyond the applicable statute of limitations, as his attorney, Stein was obligated under Rule 11 to inquire into whether his client's claim comported with the statue of limitations and if it did not, to refrain from instituting such an action. Stein failed to uphold his obligation here and instead commenced the within action with the knowledge that it was in fact time-barred. This act is made further egregious by the fact that nowhere in plaintiff's Complaint does it state that plaintiff purchased his single share of common stock in NFP, Inc. in 1988, a fact which appears to have been intentionally omitted by Stein in the hope of concealing the fact that plaintiff's claim is time-barred as a matter of law.

In an effort to circumvent the obvious statute of limitations defect of plaintiff's claim, Stein pursued a line of argument that plaintiff's payment of annual dues in 2005 constituted the purchase of a second, preferred, security in NFP, Inc. However, as repeatedly pointed out throughout this Report and Recommendation, Stein failed to offer any case law to support such an assertion. Nor has independent research produced any. Accordingly, it is "patently clear" that such a claim "has absolutely no chance of success under existing precedents." <u>Dujardin</u>, 359 F. Supp. 2d at 360.

Moreover, although Stein couches plaintiff's claim as one for securities fraud, a review of the Complaint demonstrates that the purported misrepresentations upon which plaintiff's

claim is based sound in corporate mismanagement or breach of fiduciary duty. It is black-letter law that such allegations do not support a claim for securities fraud under Section 10(b) of the Exchange Act. See Santa Fe Indus., 430 U.S. at 476, 479; Luce, 802 F.2d at 55. Such allegations serve only to strengthen the frivolity of plaintiff's complaint and are deserving of sanctions against Stein.

Although monetary sanctions may only be awarded against counsel for a violation of Rule 11(b)(2) and not against the represented party, see Fed. R. Civ. P. 11(c)(2)(A); Simon Debartolo Group, 186 F.3d at 166, on the theory that "monetary responsibility for such violations is more properly placed solely on the party's attorneys," Fed. R. Civ. P. 11 advisory committee note to 1993 amendments, sanctions may be imposed against a party for a violation of Rule 11(b)(1). See Fed. R. Civ. P. 11(c)(2). Since this action appears to be nothing more than another attempt in what seems to be a pattern of harassment of the defendants, I find that sanctions are also proper against the plaintiff. As noted above, in addition to this case, Libaire is also a plaintiff in the State Court Action, which asserts virtually identical allegations to the ones contained in plaintiff's Complaint in the within action against the same defendants. (North Fork Preserve, Inc. v. Kaplan, Index No. 04-27167 (N.Y. Sup. Ct.); see also Kaplan Decl., Ex. D.) Many of the shareholders' claims having been dismissed in the State Court Action, which was ultimately upheld on appeal, (Kaplan Decl., Ex. N.), it appears that plaintiff was dissatisfied with the State Court Action and chose to institute the within action as another attempt to harass defendants. In addition, Stein has commenced at least one other action on behalf of a minority shareholder, Julien Libaire, which the undersigned can only assume is a relative of the plaintiff herein, against the same defendants in state court as well, further evidence of yet more

-23-

harassment.  (<u>Libaire v. Kaplan</u>, Index No. 9535-06 (N.Y. Sup. Ct.); <u>see</u> <u>also</u> Krudop II Decl., Ex. G.)  Accordingly, it appears that the securities fraud claim herein was brought solely to harass the defendants in federal court.

With respect to Stein, it should also be noted that this is not the first time he has flouted his professional obligations and engaged in sanctionable behavior, a fact which Stein does not even attempt to dispute in his declaration submitted in opposition to defendants' motion.  <u>See</u> <u>Margo v. Weiss</u>, 213 F.3d 55, 65 (2d Cir. 2000) (affirming district court's imposition of sanctions against Stein for filing affidavits, delayed deposition errata sheets and supplemental interrogatory answers that contradicted plaintiffs' earlier deposition testimony and interrogatory answers); <u>Alkoff v. Gold</u>, 702 F. Supp. 429, 432 (S.D.N.Y. 1988) (imposing sanctions against Stein for his "unreasonable conduct" in filing a baseless motion for sanctions in an attempt to "dispose of the case without a resolution on the merits").  It is clear that Stein has not "learned his lesson" from these prior impositions and that further sanctions are necessary to prevent Stein from engaging in such behavior in the future.

"Rule 11 imposes a duty on every attorney to conduct a reasonable pre-filing inquiry into the evidentiary and factual support for the claim, and to certify that the legal arguments are supported by existing law, and therefore that they are not frivolous."  <u>Cap. Bridge Co., Ltd. v.</u> <u>IVL Tech. Ltd.</u>, No. 04-CV-4002, 2007 U.S. Dist. LEXIS 79771, at *30 (S.D.N.Y. Oct. 26, 2007) (citing Fed. R. Civ. P. 11(b)).  "While sanctions are not the appropriate means to address professional incompetence, 'counsel . . . cannot be permitted to engage with impunity in conduct of egregious professional irresponsibility.'"  <u>Inducol, LDA v. Ford Motor Co.</u>, No. CV-92-0798, 1992 WL 189458, at *3 (E.D.N.Y. July 8, 1992) (quoting <u>Perez v. Velez</u>, 629 F. Supp. 734, 737

(S.D.N.Y. 1985)). The "willingness to proceed with this action without a proper factual foundation, combined with the obvious insubstantiality of the [C]omplaint, make[] it pointedly clear . . . that this action is both 'entirely without color' and brought for 'improper purposes.'" Inducol, 1992 WL 189458, at *3 (quoting Perez, 629 F. Supp. at 736) (additional citation omitted). Based on the foregoing, defendants' motion for sanctions against both plaintiff and Stein should be granted.

Notwithstanding the foregoing, defendants are not entitled to sanctions under Rule 11 due to their failure to comply with the safe harbor provision embodied in Rule 11(c), a fact which is pointed out by plaintiff in his opposition papers and defendants do not dispute in their reply papers. However, based on the mandatory language contained in the PSLRA, sanctions are required to be imposed where, as here, a complaint "substantially fails to comply with Rule 11(b)." Simon Debartolo Group, 186 F.3d at 167. Under the PSLRA, the presumption is that the sanctions awarded should equal the amount of reasonable attorney's fees and costs incurred by defendants in defending against this baseless action. Such a presumption is rebuttable if plaintiff demonstrates that either the Rule 11 violation is de minimis or imposing such a sanction would create an unreasonable burden. As plaintiff has failed to offer any evidence or argument whatsoever to rebut this presumption, I find that the statutory presumption should be enforced.

For the foregoing reasons, I recommend that defendants be awarded sanctions against both plaintiff and his counsel, Stein, pursuant to the PSLRA, equal to the amount of reasonable attorney's fees and costs incurred by defendants in connection with this litigation.

<u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned recommends that defendants' motion for summary judgment be granted and that plaintiff's complaint be dismissed in its entirety. I further recommend that defendants' motion for sanctions be granted and that both plaintiff and his counsel, Mitchell Stein, be sanctioned in an amount equal to the amount of reasonable attorney's fees and costs incurred by defendants in connection with this action, pursuant to the PSLRA.

<u>OBJECTIONS TO THIS REPORT AND RECOMMENDATION</u>

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this report. Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), and 72(b); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert.</u> denied, 513 U.S. 822 (1994); <u>Frank v. Johnson</u>, 968 F.2d 298 (2d Cir. 1992), <u>cert.</u> denied, 506 U.S. 1038 (1992); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

SO ORDERED.

Dated: Central Islip, New York
      January 17, 2008

                            /s/ E. Thomas Boyle
                            HON. E. THOMAS BOYLE
                            United States Magistrate Judge