UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JOHN H. LIBAIRE,

                                         Plaintiff(s),       <u>MEMORANDUM</u>
                                                                      <u>OPINION AND ORDER</u>

                    -against-                                       CV 06-1500 (DRH) (ETB)

MYRON KAPLAN, JANET KRUDOP, NORTH
FORK PRESERVE, INC., and NORTH FORK
PRESERVE, CO.,

                                                     Defendant(s).
-------------------------------------------------------------------------X

      Before the court is a motion by the judgment debtors, plaintiff, John H. Libaire ("Libaire"), and his counsel, Mitchell A. Stein ("Stein") (collectively the "judgment debtors"), to quash a post-judgment subpoena served upon them by defendants on June 21, 2010 in an effort to enforce a judgment dated January 25, 2010, entered by Judge Hurley, the district court judge assigned to this action, which judgment imposed sanctions against both judgment debtors in the amount of $94,845.45. For the following reasons, the motion to quash is denied.

<u>FACTS</u>

      Familiarity with the facts of the underlying action is presumed. By Report and Recommendation dated January 17, 2008, the undersigned recommended that defendants' motion for summary judgment be granted and that Libaire and his counsel, Stein, be sanctioned pursuant to the Private Securities Litigation Reform Act ("PSLRA") for bringing a frivolous securities action. That recommendation was adopted by Judge Hurley on March 24, 2008 and

-1-

the matter was again referred to the undersigned to report and recommend as to the amount of sanctions that should be awarded to defendants.

By Report and Recommendation dated September 26, 2008, the undersigned recommended that sanctions be imposed in the amount of $79,837.87. Judge Hurley adopted that recommendation on May 22, 2009 and, due to the additional legal services rendered, increased the amount of sanctions to $94,845.45. A judgment in that amount was issued on May 22, 2009. The judgment was amended twice thereafter - first, on May 29, 2009 and again on January 25, 2010 - but the amount of the judgment remained the same throughout.

Libaire timely appealed the Second Amended Judgment on February 25, 2010. By Summary Order dated October 6, 2010, the Second Circuit affirmed the district court's award of summary judgment in favor of the defendants as well as the sanctions award imposed pursuant to the PSLRA.

By subpoena dated June 21, 2010, defendants sought to obtain both documents and deposition testimony from Stein. (Def. Ex. B.) The subpoena commanded Stein to appear for a deposition and to produce twenty categories of documents on July 28, 2010. (Def. Ex. B.) Stein objected to the subpoena and on July 27, 2010 - the day before the subpoena commanded his appearance and production - the judgment debtors sought leave from this court to file a motion to quash the subpoena. The request was referred to the undersigned by Judge Hurley and a pre-motion conference was held on August 5, 2010. The judgment debtors were granted permission at that time to move to quash the June 21, 2010 subpoena.

The fully briefed motion to quash was filed with the Court on October 27, 2010. In their motion, the judgment debtors assert that the subpoena should be quashed because: (1) the court

lacks subject matter jurisdiction to enforce the subpoena; and (2) the subpoena is overly broad, unduly burdensome and requests the production of privileged and confidential information.

DISCUSSION

I.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 45(c)(3), a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 43(c)(3)(A)(iii), (iv). In response to a motion to quash a subpoena, "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) (quotation omitted). "Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome." Corbett v. Ehome Credit Corp., No. 10-CV-26, 2010 WL 3023870, at *3 (E.D.N.Y. Aug. 2, 2010) (quotation omitted). The decision whether to quash or modify a subpoena is committed to the sound discretion of the trial court. See Corbett, 2010 WL 3023870, at *3; Ebbert v. Nassau County, No. CV 05-5445, 2007 WL 674725, at *4 (E.D.N.Y. Mar. 5, 2007).

II.  The Court Has Jurisdiction to Enforce the Subpoena

"As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction

over subsequent proceedings necessary to 'vindicate its authority, and effectuate its decrees.'" Dulce v. Dulce, 233 F.3d 143, 146 (2d Cir. 2000) (quoting Peacock v. Thomas, 516 U.S. 349, 354 (1996)). Such authority includes proceedings to enforce the judgment rendered. See Dulce, 233 F.3d at 146 (citation omitted).

The judgment debtors argue that because the Court determined in rendering summary judgment for defendants that plaintiff did not purchase a security within the applicable limitations period to raise a cognizable securities claim, the Court lacks subject matter jurisdiction over this action. (Pl. Mem. of Law 5.) According to the judgment debtors, this lack of subject matter jurisdiction renders the subpoena void and any decision by the Court a nullity. (Id.) However, plaintiff made virtually the same argument to the Second Circuit when appealing the award of sanctions under the PSLRA and the Circuit Court squarely rejected it. See Libaire v. Kaplan, No. 99-2659-cv, 2010 U.S. App. LEXIS 20594, at *5-7 (2d Cir. Oct. 6, 2010).

In pursuing his appeal, plaintiff argued that the district court was without authority to award sanctions under the PSLRA because there was no "final adjudication of the action" in that the court "impliedly determined that [he] lacked statutory standing" since his securities claims were time-barred. See id. at *5 (alteration in original). The Circuit explicitly disagreed with plaintiff and held as follows:

> Even assuming arguendo that a dismissal for lack of standing would not constitute a final adjudication for purposes of the PSLRA, the district court's decision makes clear that it is an adjudication of the merits (i.e., the timeliness) of Libaire's claims, not a determination of whether he had standing to bring suit.

Id. (citing Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995) (holding that, under federal law, the dismissal of a claim as time-barred is adjudication of merits for purposes of res

judicata)). The Circuit ultimately held that plaintiff's "contention that there was no final adjudication within the meaning of the PSLRA is without merit." Libaire, 2010 U.S. App. LEXIS 20594, at *7.

The judgment debtors attempt to circumvent the Circuit's clear holding by now arguing that "[n]owhere in the Second Circuit [d]ecision do the words 'subject matter jurisdiction' appear." (Pl. Reply Mem. of Law 1.) Such an argument is effectively "grasping at straws" and patently without merit. The judgment debtors also seem to imply that the Court should ignore the Second Circuit's decision because it is a summary order, "which by its terms 'do[es] not have precedential effect.'" (Id. 2.) While the judgment debtors are correct about the precedential value of the Circuit's opinion beyond this action, the decision is clearly controlling in the within action as law of the case. See United States v. Uccio, 940 F.2d 753, 757 (2d Cir. 1991) ("When an appellate court has once decided an issue, the trial court, at a later state in the litigation, is under a duty to follow the appellate court's ruling on that issue."); Am. Hotel Int'l Group Inc. v. OneBeacon Ins. Co., 611 F. Supp. 2d 373, 378 (S.D.N.Y. 2009) ("When a trial court's decisions have been ruled on by an appellate court, it is the appellate court's decision that is law of the case."); see also Woodard v. New York Health & Hosps. Corp., No. 04-CV-5297, 2010 U.S. Dist. LEXIS 68916, at *33 (E.D.N.Y. July 7, 2010) ("[W]here issues have been explicitly or impliedly decided on appeal, the district court is obliged . . . to follow the decision of the appellate court.") (quoting Burrell v. United States, 467 F.3d 160, 165) (2d Cir. 2006)).

Accordingly, since the Second Circuit found that this Court had jurisdiction to award sanctions under the PSLRA, it similarly has jurisdiction to enforce the subpoena at issue herein. The judgment debtors' motion to quash the subpoena on jurisdictional grounds is therefore

denied.

III.   The Subpoena

The judgment debtors also argue that the subpoena should be quashed because it is overly broad, unduly burdensome and requests the production of privileged or confidential information. This argument fails as well.

   A.   Overbreadth and Undue Burden

The judgment debtors assert that the subpoena at issue herein is overly broad and unduly burdensome because it seeks twenty categories of documents from Stein relating to his assets and liabilities. Specifically, the subpoena commands the production by Stein of any documents pertaining to: (1) any real property owned, rented or leased since 2004; (2) bills paid; (3) pay stubs or checks for the past three years; (4) any businesses owned, in whole or in part, including accounts receivable, accounts payable, inventory, sales, payroll, taxes, bank statements and general ledgers; (5) pensions or 401(k) accounts; (6) bank statements for the past three years; (7) life insurance policies; (8) deeds and mortgages; (9) loans or loan agreements; (10) credit card statements for the past three years; (11) contracts or agreements for the past three years; (12) vehicle titles; (13) individual and corporate income tax returns; and (14) any judgments rendered against Stein other than the within one. (Def. Ex. B.) According to the judgment debtors, "[i]t is difficult to envision more blunderbuss or overbroad requests." (Pl. Mem. of Law 11.)

However, Federal Rule of Civil Procedure 69, which provides judgment creditors with authorization to conduct post-judgment discovery, see Fed. R. Civ. P. 69(a), permits "wide latitude in using the discovery devices provided by the Federal Rules in post-judgment

proceedings." Gibbons v. Smith, No. 01 Civ. 1224, 2010 WL 582354, at *3 (S.D.N.Y. Feb. 11, 2010) (citing Fed. R. Civ. P. 69(a)(2)). In fact, the "scope of post-judgment discovery is broad, . . . and a [judgment creditor] is entitled to a very thorough examination of a judgment debtor with respect to its assets." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., No. 88 CV 3039, 1993 WL 50528, at *1 (E.D.N.Y. Feb. 23, 1993) (quotation omitted); see also Banco Central De Paraguay v. Paraguay Humanitarian Found., No. 01 Civ. 9649, 2006 WL 3456521, at *8 (S.D.N.Y. Nov. 30, 2006) ("Under Rule 69(a), a judgment creditor is entitled to a wide range of discovery concerning the assets and liabilities of a judgment debtor."). "Discovery of a judgment debtor's assets is conducted routinely under the Federal Rules of Civil Procedure." First City, Texas-Houston, N.A. v. Rafidain Bank, 281 F.3d 48, 54 (2d Cir. 2002) (citing Fed. R. Civ. P. 69(a)). Because of the wide latitude afforded to defendants as judgment creditors under Rule 69, I find the subpoena to be sufficiently tailored and not, as the judgment debtors assert, overly broad.

With respect to undue burden, "a court is required to weigh the burden to the subpoenaed party against the value of the information to the serving party." Ebbert, 2007 WL 674725, at *4 (citation omitted). "Whether a subpoena imposes an undue burden depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and the burden imposed." Id. (quoting United States v. International Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). Here, the documents defendants seek are clearly relevant and necessary in that they all pertain to Stein's assets and liabilities, which are determinative of whether defendants will be able to collect on their judgment and the proper recourse they must consider to do so. In

addition, the document requests are sufficiently tailored, given the broad discovery permitted by Rule 69, described with particularity, and, for the most part, only seek documents for the three years prior to production. Moreover, the judgment debtors fail to explain how these requests are unduly burdensome other than to state that defendants' document requests "clearly evidence an effort to harass and unduly burden Stein." (Id. 12.) I find such a generalized assertion insufficient to meet the judgment debtors' burden on a motion to quash a subpoena.

For the foregoing reasons, the judgment debtors' motion to quash the subpoena on the grounds that it is overly broad or unduly burdensome is denied.

      B.      Confidential and Privileged Information

The judgment debtors' final argument is that the subpoena should be quashed because it seeks confidential and privileged information, including copies of Stein's personal and corporate income tax returns as well as all financial documents pertaining to any businesses Stein has an ownership interest in, including his law practice. (Pl. Mem. of Law 12.) Specifically, the subpoena seeks all documents relating to accounts receivable, accounts payable, inventory, sales, payroll, taxes, bank statements and general ledgers for the last three years. (Def. Ex. B.)

            1.      Income Tax Returns

Although income tax returns are not inherently privileged, courts are typically reluctant to compel their disclosure because of both "the private nature of the sensitive information contained therein" and "the public interest in encouraging the filing by taxpayers of complete and accurate returns." Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979). To compel the disclosure of income tax returns, a two-part test must be satisfied: (1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for

the returns because the information is not "otherwise readily obtainable." United States v. Bonanno Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E.D.N.Y. 1988) (citing S.E.C. v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y. 1985)). The requesting party bears the burden of establishing both relevancy and a compelling need for the tax returns. See Carmody v. Vill. of Rockville Ctr., CV-05-4907, 2007 U.S. Dist. LEXIS 50933, at *5 (E.D.N.Y. July 13, 2007) (stating that the modern trend seems to place the burden of proof on the requesting party); A.F.L. Falck, S.p.A. v. E.A Karay Co., Inc., 131 F.R.D. 46, 48 (S.D.N.Y. 1990) (granting motion to compel production of corporate tax returns where plaintiff demonstrated relevance and a compelling need for the returns).

Tax returns are considered relevant to the subject matter of an action when a party's income may be used to calculate damages, see, e.g., Carmody, 2007 U.S. Dist. LEXIS 50933, at *7 (finding that plaintiff's federal income tax returns were relevant to his claim of lost earnings and damages because they would provide the defendant with accurate information concerning plaintiff's income); Hazeldine v. Beverage Media, Ltd., No. 94 Civ. 3466, 1997 WL 362229, at *4 (S.D.N.Y. June 27, 1997) (holding that defendant's tax returns were relevant because defendant's wealth was "clearly relevant to plaintiff's claim for punitive damages"), or where the tax returns are reasonably expected to contain information concerning sources and amounts of income and related financial information. See, e.g., Gates v. Wilkinson, No. 03-CV-763, 2005 WL 758793, at *2 (N.D.N.Y. Apr. 5, 2005). Courts in this circuit have typically granted motions to compel the production of tax returns in the context of post-judgment discovery. See, e.g., The Edward Andrews Group, Inc. v. Addressing Servs. Co., Inc., No. 04 Civ. 6731, 2006 U.S. Dist. LEXIS 28967, at *2 (S.D.N.Y. May 4, 2006) (granting motion to enforce post-judgment

subpoena that sought financial statements, bank statements, investment account statements, and tax returns); Petersen v. Valenzano, No. 89 Civ. 5346, 1993 WL 106475, at *1 (S.D.N.Y. Apr. 8, 1993) (directing judgment debtor to submit to a deposition and granting costs where judgment debtor failed to comply with subpoena that sought, among other things, tax returns).

Here, Stein's income tax returns are clearly relevant to defendants' enforcement of their judgment against Stein such that they will provide defendants with necessary information concerning Stein's assets and liabilities. Moreover, since Stein has been less than cooperative in producing any of the documents requested by defendants, there is a compelling need for the production of his corporate and personal income tax returns as well. Accordingly, the judgment debtors' motion to quash the subpoena to the extent that it seeks the production of Stein's income tax returns is denied.

2. Privileged Information

The judgment debtors assert in their Memorandum of Law in support of their motion to quash that the subpoena herein is improper because it seeks "privileged or other protected information." (Pl. Mem. of Law 12.) However, the judgment debtors fail to explain with any specificity how producing the documents requested would reveal any information subject to the attorney-client privilege. Moreover, to the extent that the subpoena seeks financial information and documents from Stein's law practice, nothing contained in the subpoena requests confidential communications between Stein and his clients. Rather, it appears that the only information that would possibly be produced pertaining to Stein's legal clients would be their identity and information concerning any fees they have paid or retainer agreements entered into, none of which are privileged. See, e.g., In re Grand Jury Subpoena Served Upon John Doe,

781 F.2d 238, 247 (2d Cir. 1986) (en banc) ("We consistently have held that, absent special circumstances, client identity and fee information are not privileged."); Bank Hapoalim, B.M. v. American Home Assurance Co., No. 92 Civ. 3561, 1993 WL 37506, at *5 (S.D.N.Y. Feb. 8, 1993) ("Documents regarding payment of fees, billing and time expended are generally subject to discovery."); Duttle v. Bandler & Kass, 127 F.R.D. 46, 52 (S.D.N.Y. 1989) ("Attorneys' bills and communications regarding retainer agreements are not privileged."); In re Nassau County Grand Jury Subpoena Duces Tecum Dated June 24, 2003, 4 N.Y.3d 665, 679 (2005) (affirming denial of motion to quash subpoena that sought production of, inter alia, law firms' financial records, including general ledgers, check registers, "documentation of monies paid and received, check stubs, cancelled checks, and bank statements").

Accordingly, the judgment debtors' motion to quash the subpoena on the grounds that it requests the production of privileged information is denied.

## Conclusion

For the foregoing reasons, the judgment debtors' motion to quash the subpoena dated June 21, 2010 is denied in its entirety. Mitchell Stein is directed to comply with the subpoena within fifteen (15) days of the date of this Order.

**SO ORDERED:**

Dated: Central Islip, New York
January 19, 2011

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge