UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN H. LIBAIRE, JR.,

                        Plaintiff,                    REPORT AND
                                                   RECOMMENDATION

        -against-                           CV 06-1500 (DRH) (ETB)

MYRON KAPLAN, JANET KRUDOP, NORTH
FORK PRESERVE, INC. and NORTH FORK
PRESERVE, CO.,

                        Defendants.
------------------------------------------------------------------------X

TO THE HONORABLE DENIS R. HURLEY, UNITED STATES DISTRICT JUDGE:

      Before the Court is the defendants' application for attorneys' fees and costs in the amount

of $87,052.74. The United States Court of Appeals for the Second Circuit remanded the matter to

this Court for calculation of attorneys' fees and single costs on appeal as damages against plaintiff

and his counsel under Federal Rule of Appellate Procedure 38 ("FRAP 38"). Plaintiff and his

counsel oppose the application, arguing, inter alia, that the requested fees are not reasonable. For

the reasons that follow, I recommend that defendants be awarded damages in the amount of

$83,557.74. I further recommend that plaintiff John H. Libaire, Jr., be liable for 10% , attorney

Mitchell A. Stein, Esq., be liable for 45%, and attorney Steven Altman, Esq., be liable for 45% of

this award.[1]

---

      [1]This Report and Recommendation will refer to Libaire, Stein, and Altman collectively as
"plaintiff," except where it is necessary to distinguish among them.

Familiarity with the underlying facts of this action is assumed.  Plaintiff commenced this action on March 31, 2006, asserting causes of action for securities fraud, pursuant to Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5 of the Securities and Exchange Commission, promulgated thereunder, 17 C.F.R. § 240.10b-5, as well as common law fraud and breach of fiduciary duties.  (Compl. ¶ 1.)  Defendants moved for summary judgment, as well for sanctions pursuant to Federal Rule of Civil Procedure 11 and the Private Securities Litigation Reform Act ("PSLRA"), charging that plaintiff's securities fraud action was frivolous.

On January 17, 2008, I issued a report and recommendation advising that (1) summary judgment be granted in favor of defendants on plaintiff's securities fraud claim; (2) supplemental jurisdiction over plaintiff's state law claims be declined; and (3) sanctions be awarded against both plaintiff and his trial counsel, pursuant to the PSLRA, in an amount equal to the reasonable attorneys' fees and costs incurred by defendants in defending the action.  On March 24, 2008, the district court adopted the report and recommendation, granted summary judgment in favor of defendants, dismissed plaintiff's state law claims, and imposed sanctions against both plaintiff and his trial counsel for bringing a frivolous complaint.  The district court referred the determination of the amount of sanctions–that is, the amount of reasonable attorney's fees and costs incurred in defending against the action–to me.

My subsequent report and recommendation recommended an award of $79,837.87, reflecting the full amount of attorneys' fees and costs incurred by defendants.  On May 22, 2009, the district court adopted the report and recommendation, adjusting the amount of sanctions  awarded to $94,845.45 to reflect additional bills incurred by defendants in connection with the case.  The Clerk

of the Court thereafter entered judgment in favor of defendants and awarding sanctions.[2]  The

plaintiff and his trial counsel timely appealed.

The Second Circuit affirmed both the grant of summary judgment and the award of sanctions.

On February 1, 2011, in response to a motion by defendants-respondents, the Second Circuit

determined that the appeal was frivolous and sanctioned the plaintiff-appellant and his counsel by

awarding attorneys' fees and costs to the defendants-appellees under FRAP 38.  See Order, Libaire

v. Kaplan, No. 09-2659-cv (2d Cir. Feb. 1, 2011) The appellate court "remand[ed] to the district

court for calculation of Defendants-Appellees' reasonable attorneys' fees and single costs on appeal,

and for allocation of those amounts between Plaintiff-Appellant and his counsel."  Id. (citations

omitted).


DISCUSSION

I.    Legal Standards

Federal Rule of Appellate Procedure 38 authorizes the courts of appeals to award damages

to appellees where the court "determines that an appeal is frivolous."  Fed. R. App. Proc. 38.  Such

damages are awarded  "as a matter of justice to the appellee and as a penalty against the appellant."

Fed. R. App. Proc. 38 advisory committee's notes.  The Second Circuit has explained:


Although a party which loses in the district court has the right to

---

[2]A First Amended Judgment, correcting certain clerical errors, was entered on May 29, 2009.  A Second Amended Judgment, which, inter alia, made clear that the plaintiff's state law claims were dismissed without prejudice, was entered on January 25, 2010.  Plaintiff appealed the Second Amended Judgement and related orders on February 25, 2010.  That appeal, No. 10-0746-cv, was ultimately dismissed as untimely.

> pursue any and all bona fide arguments on appeal, the right to an appeal does not grant a party a license to clog the appellate docket by advancing meritless arguments for the sole purpose of harassing the prevailing party and subjecting it to undue time and expense.

Rodriguez Alvarez v. Bahama Cruise Line, Inc., 898 F.2d 312, 317 (2d Cir. 1990). It is well-settled that appellate courts are empowered to award reasonable attorneys' fees, in addition to single or double costs, as damages. See, e.g., Horoshko v. Citibank, N.A., 373 F.3d 248, 250 (2d Cir. 2004); Rodriguez Alvarez, 898 F.2d at 318.

The Supreme Court has recently addressed the standard for awarding attorneys' fees, pursuant to 42 U.S.C. § 1988, in a civil rights action including both frivolous and nonfrivolous claims. Fox v. Vice, 536 U.S. —, — S. Ct. —, 2011 WL 2175211 (June 6, 2011), held that courts have wide discretion to award fees "for costs that the [fee applicant] would not have incurred but for the frivolous claims." Id. at *3. The Court noted that this may allow the fee applicant to recover fees incurred in relation to a non-frivolous claim, such as when counsel performs work that defends against both a frivolous and non-frivolous claim. "[T]he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation." Id. at *8. If the costs would have been incurred even in the absence of the frivolous claim, they were not caused by the frivolous claim, and would not be compensable.

Here, of course, the Second Circuit has determined that the plaintiff's entire appeal was frivolous and has remanded the case to this Court for a calculation of reasonable attorney's fees and costs to assess as sanctions. This Court will not revisit the Second Circuit's frivolousness

determination as plaintiff seeks to argue here. The "law of the case" doctrine "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001) (internal quotation marks and emphasis omitted); see also In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S. Ct. 291, 40 L. Ed. 414 (1895) ("[An inferior court] is bound by the [superior court's] decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded."); Schwartz v. Chan, 142 F. Supp. 2d 325, 329 (E.D.N.Y. 2001) ("Under the law of the case, a district court cannot reconsider on remand an issue decided by an appellate court."). It is the district court's obligation to carry out the appellate court's directives "scrupulously and fully," United States v. E.I. Du Pont de Nemours & Co., 366 U.S. 316, 325, 81 S. Ct. 1243, 6 L. Ed. 2d 318 (1961), consistent with both "the express terms [and] the spirit of the mandate," Kidder, Peabody & Co. v. Maxus Energy Corp. (In re Ivan F. Boesky Sec. Litig.), 957 F.2d 65, 69 (2d Cir. 1992). Thus, this Court must (1) calculate defendants-appellees' "reasonable attorneys' fees and single costs on appeal"; (2) "allocat[e] those amounts between [p]laintiff-[a]ppellant and his counsel"; and (3) "enter an order . . . in the appropriate amounts."[3]

The Second Circuit has assessed "reasonable attorneys' fees and single costs on appeal"

---

[3] Ignoring applicable law, the first two points of Plaintiff's Memorandum in Opposition to Defendants' Application for Attorneys' Fees and Costs on Appeal ("Plaintiff's Opp.") argue that the appeal was not frivolous and that this court should not award the defendants any attorneys' fees. (See Plaintiff's Opp. at 1, 5-14).

(emphasis added), indicating that the standard rules for calculating attorneys' fees should apply.[4] It is well-settled that where attorneys' fees are sought, the court must determine what is reasonable and adjust the fees accordingly. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (citing Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982)); see also Lynch v. Town of Southampton, 492 F. Supp. 2d 197, 209 (E.D.N.Y. 2007); Arnold v. Storz, No. 00-CV-4485, 2006 WL 2792749, at *6-7 (E.D.N.Y. Sept. 27, 2006). To do so, a "presumptively reasonable fee" is determined by "bear[ing] in mind all of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis omitted). The court determines the presumptively reasonable fee by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

The burden is on the party seeking attorneys' fees to submit sufficient evidence to support the hours worked and the rates claimed. See id.; Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) ("The party seeking the award bears 'the burden of documenting the hours reasonably spent by counsel . . . .'"). Accordingly, the party seeking an award of attorneys' fees must support its application by providing contemporaneous time records that detail "for each attorney [and legal assistant], the date, the hours expended, and the nature of the work done." New York State

---

[4]At least one Court of Appeals has held that, when awarding attorneys' fees as sanctions under FRAP 38, the only question to be asked is "whether the appellee actually incurred the fees sought in defending against the appeal." Sun-Tek Indus. v. Kennedy Sky-Lites, Inc., 865 F.2d 1254, 1255 (Fed. Cir. 1989). The Second Circuit does not appear to have adopted this rule. Moreover, in light of the order directing the award of "reasonable" attorneys' fees, it is clear this Court must make a reasonableness determination.

Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); see also Scott v. City of New York, — F.3d —, 2011 WL 1990806 (2d Cir. May 24, 2011) (reaffirming Carey). If the documentation is inadequate, the court may reduce the award accordingly. See Hensley, 461 U.S. at 433; Molefi v. The Oppenheimer Trust, No. 03-CV-5631, 2007 WL 538547, at *5 (E.D.N.Y. Feb. 15, 2007) ("If such records are inadequate the Court may reduce the award accordingly" (internal quotation marks omitted)). However, as the Supreme Court has recently emphasized:

> [T]he determination of fees should not result in a second major litigation. The fee applicant . . . must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.

Fox, 2011 WL 2175211, at *8 (internal citations and quotation marks omitted).

II.    Reasonable Hourly Rate

The Second Circuit has clarified that when determining an award of attorney's fees, there is "a presumption in favor of application of the forum rule," Simmons v. New York City Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009), such that courts "should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee," id. at 174 (internal quotation marks omitted). In the Eastern District of New York, it has been determined that reasonable hourly rates are approximately $200-$480 per hour for partners, $175-$295 per hour for senior associates, $100-$200 per hour for junior associates and $75 per hour for

legal assistants.  See Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319, 2010 WL

2539771, at *4 (E.D.N.Y. Mar. 15, 2010) (collecting cases); see also Manzo v. Sovereign Motor

Cars, Ltd., No. 08-CV-1229, 2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010) (approving hourly

rate of $480.00 for a senior partner); Olsen v. County of Nassau, No. CV-05-3623,  2010 WL

376642, at *4 (E.D.N.Y. Jan. 26, 2010) (determining reasonable hourly rates to be $375-$400 for

partners, $200-$250 for senior associates and $100-$175 for junior associates); Gutman v. Klein, No.

03-CV-1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 9, 2009) (approving rates of $300 to $400

for partners, $200 to $300 for senior associates, and $100 to $200 for junior associates); Rodriguez

v. Pressler & Pressler, No. CV-06-5103, 2009 WL 689056, at *1 (E.D.N.Y. March 16, 2009)

(approving hourly rate of $450.00 for experienced counsel).

　　　　In the within action, five attorneys and one paralegal from the firm Rosenberg Calica &

Birney LLP ("RC&B") worked on the appeal: (1) Ronald J. Rosenberg, Esq., a partner; (2) Edward

M. Ross, Esq., a partner; (3) Lesley A. Reardon, Esq., a partner; (4) John S. Ciulla, Esq., an

associate; (5) Patrick John White, Esq., a junior associate; and (6) Julianne Abend, a paralegal.[5]

(Rosenberg Decl. ¶¶ 3, 5, 9, 12, 13-15).  The firm focuses on civil and commercial litigation, and

each of the senior attorneys who worked on the case specializes and has extensive experience in

litigating complex commercial cases.  (Rosenberg Decl.  ¶¶ 5-6, 9, 12, 13).  Rosenberg has thirty

(30) years of experience and specializes in complex commercial litigation and appeals.  (Rosenberg

Decl. ¶¶ 5-6).  He billed at an hourly rate of $450.00 from June 2009 until April 15, 2010, and

$475.00 after that date.  (Rosenberg Decl. ¶ 7).  Ross has been in practice for eighteen (18) years and

---

[5]The paralegal is designated "Foley" in paragraph 15 of the Rosenberg Declaration.
However, elsewhere in the papers, she is designated "Abend."  (See Rosenberg Decl. ¶ 3; id., ex.
C at 9).

has extensive experience in complex litigation. (Rosenberg Decl. ¶ 12). Ross billed at an hourly rate of $400.00 until February 2009 and $450.00 thereafter. (Id.). Reardon has seventeen (17) years of experience, including sixteen (16) years of experience in complex commercial litigation. (Rosenberg Decl. ¶ 9). Her hourly rate stood at $400.00 from July 2009 through April 15, 2010, and $450.00 after April 15, 2010. (Id.). Ciulla graduated from law school in 1985 and also specializes in complex commercial litigation. (Rosenberg Decl. ¶ 13). His hourly billing rate was $425.00 per hour. (Id.). White has been practicing law in New York for three (3) years and billed at an hourly rate of $275.00. (Rosenberg Decl. ¶ 14). Abend has been employed as a paralegal at RC&B since 2008 and billed at an hourly rate of $125.00. (Rosenberg Decl. ¶ 15).

Three years ago in this case, this Court found an hourly billing rate of $425.00 reasonable for a partner. See Report & Recommendation at 6-7 (E.D.N.Y. Sept. 26, 2008), ECF No. 41; Memorandum & Order at 1 (E.D.N.Y. May 22, 2009), ECF No. 51. Subsequent cases in this district have approved higher hourly rates for experienced counsel. See Manzo, 2010 WL 1930237, at *8; Rodriguez, 2009 WL 689056, at *1. Thus, I recommend using the following hourly rates: (1) $475.00 for Rosenberg; (2) $400.00 for Ross until February 2009 and $450.00 thereafter; (3) $400.00 for Reardon until April 15, 2010 and $450.00 thereafter; (4) $300 for Ciulla; (5) $200.00 for White; and (5) $75.00 for Abend.

III.    Time Expended

In determining the presumptively reasonable fee, a court may adjust the hours actually billed to a number the court determines to have been "reasonably expended on the litigation." Henlsey, 461 U.S. at 433 (internal quotation marks omitted). The number of hours claimed must be

"supported by time records [and not be] excessive or duplicative." LeBlanc-Sternberg, 143 F.3d at 764; see also Hensley, 461 U.S. at 434 (excluding hours not "reasonably expended"). In adjusting the number of hours, the court "must state its reasons for doing so as specifically as possible." LeBlanc-Sternberg, 143 F.3d at 764.

RC&B divides its fees into twelve (12) rough time periods, and includes a list of major tasks accomplished during each period. The following list summarizes these categories:

(a) August to September 2009–participation in CAMP conferences;[6] research regarding the impact on the appeal of the plaintiff's motion for reconsideration in the district court;

(b) October to November 2009–opposition to plaintiff's motion to stay the appeal and first motion to extend the briefing schedule;

(c) December 2009–opposition to plaintiff's second motion to extend the briefing schedule;

(d) January 2010–opposition to plaintiff's third motion to extend the briefing schedule; review of the joint appendix and opening brief;

(e) March to April 2010–motion for extension to time to file merits brief; preparation of merits brief; review of plaintiff's motion to consolidate and expedite plaintiff's appeals;

_____

[6]"The Civil Appeals Management Plan (CAMP) is the Court's program for exploring settlement in . . . civil appeals . . . ." United States Court of Appeals for the Second Circuit, Civil Appeals Management Plan, available at http://www.ca2.uscourts.gov/clerk/Forms_and_instructions/How_to_appeal/Civil_case/Civil_ap peals_management_plan.htm.

(f) May 2010–opposition to motion to consolidate, including cross-motion to dismiss the second appeal; finalizing the briefs; response to plaintiff's requests for extension of time to file reply brief;

(g) August 2010–preparation of motion to supplement the joint appendix;

(h) October 2010–preparation for and attending oral argument;

(i) November 2010–opposition to plaintiff's petition for rehearing; preparation of FRAP 38 motion;

(j) December 2010–opposition to plaintiff's second motion to file revised petition for rehearing; preparation of reply papers for the FRAP 38 motion;

(k) January 2011–review of orders received from the Second Circuit; and

(*l*) February 2011–review of order granting defendants' FRAP 38 motion.

(See Rosenberg Decl. ¶ 17).

It is worth repeating here that FRAP 38 damages serve both to sanction the party who presses a frivolous appeal and to recompense the opposing party for expenses incurred in defending against that appeal. See Fed. R. App. Proc. 38 Advisory Committee Notes; see also Rodriguez Alvarez., 898 at 317. The Second Circuit has already held that the appeal was frivolous. Thus, plaintiff's argument seeking to contest this determination on remand is simply further evidence of plaintiff's persistence in raising frivolous issues in this action. In addition, the Circuit's remand order encompasses "reasonable attorneys' fees and single costs on appeal." It does not carve out certain parts of the appeal as not compensable. With these overarching principles in mind, as well as the recent decision in Fox v. Vice, supra, the Court turns to plaintiff's specific objections.

Plaintiff objects to elements in each of the lettered categories. For category (a), plaintiff argues that participation in CAMP conferences are not compensable damages under FRAP 38 (see Plaintiff's Opp. at 14-15), and that there should be no compensation for any work in connection with the motion for reconsideration because the district court expressly declined to award attorneys' fees in connection with the motion (see id. at 15). There is no indication that the Court of Appeal intended to except the CAMP conferences from the calculation of damages. In fact, when the Second Circuit's Office of Staff Counsel deems a case appropriate for the CAMP, participation is mandatory and failure to participate in good faith may result in sanctions. See 2d Cir. R. 33.1 (Civil Appeals Management Plan). Thus, the CAMP process was an integral part of the appeal, and the fees incurred are compensable as FRAP 38 damages.

On the other hand, the claimed fees in connection with the motion for reconsideration of the district court's order adopting the recommendation to grant summary judgment and impose sanctions are not compensable. That motion was filed in the district court, and its effect on the appeal is easily discernable by a glance at Federal Rule of Appellate Procedure 4(a)(4). See Fed. R. App. Proc. 4(a)(4) (explaining the effect of certain post-trial motions in the district court when a notice of appeal has previously been filed). Defendants' counsel lists a time entry for 3.5 hours for tasks associated with the motion for reconsideration. I recommend deducting 3.5 hours charged by attorney Reardon on September 11, 2009, from the compensable hours in this category. Thus, the 15.9 hours in this category should be reduced to 12.4 hours. (See Rosenberg Decl., ex. C at 1).

As to category (b), Plaintiff argues that the preparation of the opposition to plaintiff-appellant's motion to stay the appeal is noncompensable because "this work . . . cannot be the basis for any claim of intentional frivolity." (Plaintiff's Opp. at 15). Defendants incurred these fees

-12-

because plaintiff filed a motion in the Second Circuit to stay the appeal. "But for" the frivolous appeal, the defendants would not have incurred this expense. Whether that motion itself was frivolous is immaterial. The Second Circuit has ordered plaintiff to pay defendants' reasonable attorneys' fees incurred in connection with the appeal not only to sanction plaintiff for bringing a frivolous appeal, but also to recompense defendants for having to defend against it. Carving out defendants' counsel's work on certain motions would contravene that purpose. The Court finds the 9.5 hours included in this category reasonable. (See Rosenberg Decl., ex. C at 1-2).

Regarding category (c), plaintiff asserts that the opposition to the motion for extension of time should not be compensable because the six-page submission was an "extravagant" response to a "routine scheduling motion" and because the extension was ultimately granted. (Plaintiff's Opp. at 16). Defendants point out that the motion was filed two days before the appellant's brief was due, that plaintiff had already received more than one extension of time, and that defendants' response did not merely oppose the motion, but also argued that plaintiff should be required to post a supersedeas bond. (See Memorandum of Law in Further Support of Defendants' Application for Legal Fees and Costs Pursuant to F.R.A.P. 38 ("Defendants' Reply"), at 5). The 3.6 hours expended on the brief submitted to the Circuit Court is directly related to the appeal and are not unreasonable. Moreover, the fact that defendants did not succeed in opposing the motion is immaterial. The Second Circuit did not indicate that defendants' damages should be limited in such a way. The Court finds the 3.6 hours included in this category reasonable. (See Rosenberg Decl., ex. C at 2).

Plaintiff objects to defendants' fees for reviewing the joint appendix, included in category (d), because that review "ultimately resulted in motion practice [in the district court] in which supplementation of the ECF record was sought by Defendants as a result of their prior failure to file

documents." (Plaintiff's Opp. at 16). A review of the time records reveals that defendants' counsel billed 0.2 hours for "receipt and review of Joint Appendix." (Rosenberg Decl., ex. C at 3). Review of the joint appendix is a necessary task in an appeal. To the extent that plaintiff complains because the review led to motion practice in the district court, the objection is not well-taken. Defendants have not asked for fees in connection with any motion or argument in the district court. (See Defendants' Reply at 5). Plaintiff does not specifically challenge any of the other time charged in this category. (See Plaintiff's Opp. at 16). The Court finds the 21.2 hours in this category reasonable.[7] (See Rosenberg Decl., ex. C at 2-3).

Category (e) primarily includes fees involved in obtaining an extension of time to file the appellee's brief. Plaintiff objects to those fees because defendants consistently opposed plaintiff's requests for extensions. (Plaintiff's Opp. at 16). These fees would not have been incurred if it were not for the frivolous appeal pursued by the plaintiff. Plaintiff also argues that time spent researching the "investment decision doctrine," a theory plaintiff raised in his appellant's brief, should not be taxed because "such education [to learn a well-known doctrine], especially without any finding of intentional bad faith ought not . . . be compensable." (Id. at 17). Defendants' counsel billed approximately 13.7 hours of legal research between the date counsel received the opening brief and the day they filed their opposition brief. (See Rosenberg Decl., ex. C at 3-4). Approximately 6.9 hours of this time was spent researching jurisdictional issues. (See id., ex. C at 3). Thus, defendants' counsel cannot have charged more than 6.8 hours for researching the investment decision doctrine. This is a reasonable amount of time to spend researching a theory raised for the first time on appeal. Plaintiff does not specifically challenge any of the other time charged in this

---

[7]This category includes two time records from February 2010.

category.  (See Plaintiff's Opp. at 16-17).  The Court finds the 56.2 hours in this category reasonable.  (See Rosenberg Decl., ex. C at 3-4).

Plaintiff challenges fees in category (f) that accumulated in connection with plaintiff's motion to consolidate the appeals and defendants' motion to dismiss the second appeal, arguing that the defendants' arguments were not successful insofar as the Second Circuit later sua sponte dismissed the second appeal on timeliness grounds.  (Plaintiff's Opp. at 17).  Here, too, these costs were incurred by defendants as a result of the frivolous appeal.  Plaintiff further objects that, since the Second Circuit did not order FRAP 38 sanctions in the second appeal, time spent drafting the motion to dismiss the second appeal is not compensable.  However, plaintiff filed the motion to consolidate in the first appeal (i.e., the appeal that is subject to FRAP 38 damages).  This attempt to consolidate the two appeals brought the second appeal into the ambit of the first appeal.  Defendants' primary argument opposing consolidation was that the second appeal must be dismissed, and that therefore the motion to consolidate must fail. This was a reasonable strategy.  Accordingly, the incremental time spent on the motion to dismiss is de minimis in nature.  Without the frivolous appeal, defendants would not have had to oppose the motion to consolidate.  See Fox, 2011 WL 2175211, at *8.  The Court finds the 28.3 hours in this category reasonable.  (See  Rosenberg Decl., ex. C at 4-5).

Regarding category (g), plaintiff insists that he should not be responsible for fees incurred by defendant to supplement the joint appendix because the appendix was incomplete due to defendants' error.  (Plaintiff's Opp. at 17).  Defendants note that any fees accrued in connection with the supplementation were removed from the bill.  (See Defendants' Reply at 6-7).  A review of the billing records confirms this.  (See Rosenberg Decl., ex. C at 5).  The plaintiff does not specifically

challenge any of the other time charged in this category. The Court finds the 8.4 hours in this category reasonable. (See Rosenberg Decl., ex. C at 5).

Plaintiff maintains that work preparing for oral argument and reviewing a petition for rehearing, included in category (h), is not compensable because the Second Circuit did not expressly find the oral argument or the petition for rehearing frivolous. (Plaintiff's Opp. at 18). This argument is devoid of any merit for reasons noted above. The 14.8 hours charged in this category are reasonable. (See Rosenberg Decl., ex. C at 5-6).

Finally, plaintiff objects to items in categories (i), (j), (k) and (*l*) pertaining to the corrected petition for rehearing and the FRAP 38 motion because they "are not addressed in this remand." (Plaintiff's Opp. at 18). Plaintiff's assertion regarding the petition for rehearing is bewildering. Plaintiff filed the corrected petition for rehearing in the appeal that is the subject of the instant remand order. That remand order, requiring this Court to calculate reasonable attorneys' fees incurred in connection with the appeal, was filed after the briefing on the corrected petition for rehearing was complete. The Second Circuit was aware of plaintiff's corrected petition prior to its determination that the appeal was frivolous. The claim that the corrected petition was "not addressed in this remand," as plaintiff contends, is devoid of merit.

As to the preparation of the motion for FRAP 38 sanctions in the Court of Appeals, that, too, predated the remand order. Moreover, it is well-settled that in a garden-variety fee application the time spent preparing the application is compensable. See LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 526-27 (S.D.N.Y. 2010); see also United States Football League v. Nat'l Football League, 704 F. Supp. 474, 486 (S.D.N.Y. 1989) (stating that any argument that parties cannot recoup attorney time spent on a fee application is "contrary to settled law in this Circuit"). Thus, the fees

accrued in preparing the FRAP 38 motion for the Second Circuit may be included in the damages award. Likewise, fees incurred in complying with the remand order from the appellate court are compensable. See, e.g., Natural Resources Defense Council, Inc. v. Fox, 129 F. Supp. 2d 666, 675 (S.D.N.Y 2001) ("'[T]he fee application is a necessary part of the award of attorney's fees'" (quoting Donovan v. CSEA Local Union 1000, Am. Fed'n of State, County and Municipal Emps., AFL-CIO, 784 F.2d 98, 106 (2d Cir. 1986). The Court finds the 53.7 hours in this category reasonable. (See Rosenberg Decl., ex. C at 6-7).

IV.    Calculation of Attorney's Fees

Taking into account the foregoing deductions, I recommend that RC&B be awarded $79,412.50 in attorneys' fees incurred in connection with the appeal as follows:

| Name | Hours Billed | Deductions Recommended | Recommended Hourly Rate | Total Fees Recommended |
|------|------|------|------|------|
| Rosenberg | 58.6 | 0 | $475 | $27,835.00 |
| Ross (until February 2009) | 0.5 | 0 | $400 | $200.00 |
| Ross (post-February 2009) | 6.3 | 0 | $450 | $2,835.00 |
| Reardon (until April 15, 2009) | 52.4 | 0 | $400 | $20,960.00 |
| Reardon (post-April 15, 2009) | 57.4 | (3.5) | $450 | $24,225.00 |
| Ciulla | 2.8 | 0 | $300 | $840.00 |

| | | | | |
|---|---|---|---|---|
| White | 11.7 | 0 | $200 | $2,340.00 |
| Abend | 21.9 | 0 | $75 | $1,642.50 |
| TOTAL | 211.6 | (3.5) | | $80,877.50 |

## V. <u>Expenses and Costs</u>

The Second Circuit also directed this Court to award single costs on appeal. RCB requests $2,680.24 in costs. (<u>See</u> Rosenberg Decl., ex. C at 7-8). These costs include $1,872.62 in electronic research charges (from Westlaw and PACER) and the balance in charges for photocopying, postage, binding, filing, and travel. (<u>See</u> <u>id.</u>). Plaintiff does not object to these costs.

"'Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" <u>LeBlanc-Sternberg</u>, 143 F.3d at 763 (quoting <u>United States Football League v. Nat'l Football League</u>, 887 F.2d 408, 416 (2d Cir. 1989)); <u>see also</u> <u>Miltland Raleigh-Durham v. Meyers</u>, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." (quoting <u>Reichman v. Bonsignore, Brignati & Mazzotta, P.C.</u>, 818 F.2d 278, 283 (2d Cir. 1987)). "However, expenses which are part of the attorneys' ordinary overhead are not to be reimbursed." <u>SEC v. Goren</u>, 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003) (citing <u>New York State Nat'l Org. for Women v. Terry</u>, 737 F. Supp. 1350, 1363 (S.D.N.Y. 1990)).

Expenditures for photocopies, postage, binding, filing, and travel are routinely recoverable and should therefore be awarded in full. <u>See, e.g.</u>, <u>Cho</u>, 524 F. Supp. 2d at 212 (reimbursing plaintiff for costs related to "Federal Express, reproduction, telephone, facsimile, postage, deposition

services, [and] deposition/hearing transcripts"); <u>Levy v. Powell</u>, No. 00-4499, 2000 WL 1719972, at \*12 (E.D.N.Y. July 22, 2005) (allowing recovery of costs for "photocopies, deposition transcripts, expert witness fees, travel, filing fees, messenger services, mailings, and facsimiles."); <u>Molefi</u>, 2007 WL 538547, at \*8 (finding that "costs associated with mailings, photocopies, and court fees . . . are precisely the type of costs that may be included in an award of attorney's fees");

This Circuit has also approved the award of online research charges as an element of a fee award if those charges are normally billed to clients. <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u>, 369 F.3d at 98 ("We agree that the use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that . . . the charges for such online research may properly be included in a fee award. If [counsel] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award."). The bill submitted in support of defendants' application for fees makes clear that such fees were charged to defendants. (<u>See</u> Rosenberg Decl., Ex C). They are therefore recoverable. <u>See</u> <u>Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC</u>, 549 F. Supp. 2d 274, 286-87 (E.D.N.Y. 2008) ("[A]lthough defendant's counsel offers no explanation as to whether the expenses incurred in connection with Westlaw or LEXIS or any PACER-related research are accounted for in counsel's hourly rates, it is clear from the invoices submitted in support of defendant's request that such costs were charged to defendant in the within action. Accordingly, defendant's application for costs related to computerized legal research is granted.").

Based on the foregoing, I recommend that RC&B be awarded the full amount of the costs incurred in connection with the appeal–$2,680.24.

VI.     Allocation of the Damages

The Second Circuit directed this Court to allocate the amount of damages and costs "between Plaintiff-Appellant and his counsel" and to "enter an order against appellants in the appropriate amounts."   I recommend that plaintiff John H. Libaire, Jr., pay 10% of such damages, and that the remaining 90% be paid by plaintiff's appellate counsel.   The total liability of plaintiff's counsel should be apportioned as follows: 50% to be paid by Mitchell A. Stein, and 50% to be paid by Steven Altman.

Among the purposes of FRAP 38 damages is to impose a sanction for pressing a frivolous appeal, which "clog[s] the appellate docket." Rodriguez Alvarez, 898 F.2d at 317.   It is well-established that attorneys can be held liable with their clients for damages under the rule.  See, e.g., Beekman Paper Co. v. Nat'l Paper Prods., 909 F.2d 67, 70 (2d Cir. 1990); Bartel Dental Books, Co. v. Schultz, 786 F.2d 486, 491 (2d Cir. 1986); United States v. Potamkin Cadillac Corp., 689 F.2d 379, 382 (2d Cir. 1982).   Defendants argue that plaintiff and his counsel should be jointly and severally liable for the monetary sanctions.   (See Memorandum of Law in Support of Defendants' Application for Legal Fees and Costs Pursuant to F.R.A.P 38 ("Defendants' Opening Br."), at 9-10; Defendants' Reply at 8-9).   Plaintiff's brief does not directly address the issue of allocation. Notwithstanding defendants' position, I recommend that plaintiff's counsel bear the majority of the sanctions award.

"An attorney acts not only as a client's representative, but also as an officer of the court, and has a duty to serve both masters." Business Guides, Inc. v. Chromatic Commc'ns Enters., 498 U.S. 533, 564, 111 S.Ct. 922, 112 L.Ed. 2d 1140 (1991).  Appellate counsel has "an affirmative obligation to research the law and to determine if a claim on appeal is utterly without merit and may be deemed

-20-

frivolous." Hilmon Co. (V.I.) v. Hyatt Int'l, 899 F.2d 250, 254 (3d Cir. 1990). "Counsel must realize that the decision to appeal should be a considered one, taking into account what the district judge has said, not a knee-jerk reaction to every unfavorable ruling." Simon & Flynn v. Time, Inc., 513 F.2d 832, 835 (2d Cir. 1975).

It is the province of the appellate attorney to advise a client regarding the viability of issues on appeal, and even to counter a client's instructions if they are legally or otherwise unsound. See, e.g., Sturdza v. United Arab Emirates, 281 F.3d 1287, 1294 (D.C. Cir. 2002) ("[W]e expect all lawyers practicing in this court to resist a client's desire to make poor legal arguments or unsubstantiated factual allegations." (internal quotation marks and citation omitted)); Coghlan v. Starkey, 852 F.2d 806, 816-17 (5th Cir. 1988) ("Plaintiff . . . may have been unreasonable in her obdurate rejection of concession after concession, but blame for this appeal rests upon her attorney, and usually so should the burden of any sanctions."). Thus, decisions on legal strategy and argument on appeal are rightly laid at the door of counsel. See Macklin v. City of New Orleans, 300 F.3d 552, 554 (5th Cir. 2002) ("[B]ecause the quality of the research and briefing is within the province of the attorney, we think it appropriate to place the primary burden of the sanctions on [the attorney]."); Hill v. Norfolk & Western Ry. Co., 814 F.2d 1192, 1201 (7th Cir. 1987) ("We . . . do not suppose, however, that a railroad brakeman is responsible for frivolous legal arguments, so we are minded to order Hill's counsel to bear personally the expense incurred by the railroad in briefing the issues that we have found were frivolously raised by Hill's opening brief."); cf. Potamkin Cadillac Corp., 689 F.2d at 382 (assessing FRAP 38 sanctions jointly and severally against a client and its counsel "since attorney and client are in the best position between them to determine who caused [the] appeal to be taken"). Indeed, in the analogous situation of sanctions under Federal Rule of Civil Procedure 11,

the advisory committee states that "[t]he person signing, filing submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation."  Fed. R. Civ. Proc 11 advisory committee's notes to 1993 amendments.  Further, Rule 11 requires monetary sanctions for frivolous filings to be imposed on counsel rather than on a represented party.  See Fed. R. Civ. Proc. 11(c)(5)(A); see also Fed. Rule Civ. Proc. 11 advisory committee's notes to 1993 amendments ("Monetary responsibility for such violations is more properly placed solely on the party's attorneys.").  Moreover, given that one of the purposes of sanctions "is to discourage meritless litigation and specifically frivolous appeals[,]  penalizing the plaintiff [alone] will not guarantee that his attorney[s] will be directly affected or that [they] will be deterred from bringing similar frivolous appeals in the future."  Coghlan, 852 F.2d at 817.  This suggests the greater share of sanctions should be borne by appellate counsel.

In plaintiff's opposition papers Altman urges that he should not be sanctioned, highlighting his "complete lack of involvement in the prior proceedings."  (See Plaintiff's Opp. at 13; see also Plaintiff's Opp. at 2 ("Appellate counsel had no prior involvement in this case or any related matter."); Altman Decl. ¶ 1 ("I entered my appearance in the case after summary judgment had been granted in favor of defendants . . . and Messrs. Libaire and Stein were ordered to pay sanctions under the Private Securities Litigation Reform Act . . . .")).  He also avers that he had little to do with the appeal, save for his "development and presentation" of the investment decision doctrine argument in the appellate briefs.  (Altman Decl. ¶ 4).  This argument should be rejected.

Plaintiff Libaire has been represented by two attorneys in this action.  In the district court, Stein represented Libaire.  After the district court assessed sanctions against Libaire and Stein, both individuals appealed the judgment.  Stein filed the Notice of Appeal on June 22, 2009.  Appellants

filed a motion to extend time to file their opening brief in order to hire Altman on December 15, 2009, after which Altman became counsel of record in the appeal. Altman made his first filing–another motion to extend time to file the opening brief–on January 12, 2010. On October 6, 2010, Altman argued the appeal before the Second Circuit. In addition, he signed several papers in the appeal, including the opening brief, a motion to extend time to oppose appellee's motion to dismiss, a petition for rehearing, and a corrected petition for rehearing. Stein, too signed several papers in the case, including a motion to consolidate and two motions to submit a corrected petition for rehearing. Stein also is listed as "of counsel" on many papers, including the opening brief and the petitions for rehearing.

This chronology shows that both Stein and Altman were heavily involved in the appeal, which was pending for over one-and-a-half (1½) years, from June 22, 2009 until the mandate issued on January 11, 2011. Both contributed to delaying resolution of the appeal by requesting numerous extensions to the briefing schedule.[8] See 2d Cir. Rule 38.1 (authorizing sanctions for unnecessary delay). Thus, Altman's attempts to absolve himself of responsibility for the frivolous appeal fail. Moreover, to the extent that Altman argues that he had no part in the proceedings in the district court, his argument is irrelevant. The Second Circuit authorized sanctions because the <u>appeal</u> was frivolous. Such a determination is separate and distinct from the Circuit Court's affirmance of the

---

[8]Defendants assert (<u>see</u> Defendants' Opening Br. at 9), and a glance at the United States Supreme Court website confirms, that Altman filed an application to extend time to file a petition for writ of certiorari on April 4, 2011. Supreme Court of the United States, Docket No. 10A984, <u>available at</u> http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/10a984.htm. The application was denied on April 8, 2011. <u>Id.</u> Not only are such applications disfavored, but also it appears that Altman's application, which was filed on the date that a petition for certiorari to review the Second Circuit's judgment was due, was itself late. <u>See</u> Sup. Ct. R. 13.5 ("The application [to extend the time to file a petition for certiorari] must be filed with the Clerk at least 10 days before the date the petition is due, except in extraordinary circumstances.").

grant of summary judgment and award of sanctions in the district court. The appellate attorneys should therefore be held liable for the bulk of the sanctions award.

In light of the foregoing, I recommend that FRAP 38 damages be assessed so that plaintiff John H. Libaire, Jr., is liable for 10% of the total. The remaining sanctions should be apportioned between appellate counsel, Mitchell A. Stein and Steven Altman, with each responsible for 50% of the remainder (i.e., 45% of the whole).[9] Cf. Hilmon Co., 899 F.2d at 254 (holding appellate counsel alone liable for FRAP 38 damages); Sun-Tek Indus., 865 F.2d at 1255 (same).[10]

RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Rosenberg Calica & Birney be awarded attorneys' fees in the amount of $80,877.50, and costs in the amount of $2,680.24, for a total award of $83,557.74. I further recommend that John H. Libaire, Jr., be liable for 10% of these damages, and that Mitchell A. Stein, Esq., and Steven Altman, Esq., each be liable for 45% of the damages.

OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this report. Failure to file

---

[9]Attorney Erik B. Zarkowsky signed a motion for extension of time filed with the Second Circuit. However, because it appears that this motion was his only participation in the appeal, I do not recommend assessing sanctions against him.

[10]Since a hearing will not assist the Court in making its determination, plaintiff's request for a hearing is denied. See Hill, 814 F.2d at 1201-02.

objections within ten (10) days will preclude further appellate review of the District Court's order.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), and 72(b); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822 (1994); Frank v. Johnson, 968 F.2d 298 (2d Cir. 1992), cert. denied, 506 U.S. 1038 (1992); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).


SO ORDERED.

Dated: Central Islip, New York
      June 17, 2011

/s/ E. Thomas Boyle            
HON. E. THOMAS BOYLE
United States Magistrate Judge
