UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN H. LIBAIRE,

                        Plaintiff(s),                MEMORANDUM
                                                      OPINION AND ORDER

         -against-                                    CV 06-1500 (DRH) (ETB)

MYRON KAPLAN, JANET KRUDOP, NORTH
FORK PRESERVE, INC., and NORTH FORK
PRESERVE, CO.,

                        Defendant(s).
------------------------------------------------------------------X

      Before the court is an application for recusal, dated October 20, 2011, filed by the plaintiff, John H. Libaire, and his counsel, Mitchell A. Stein, both of whom are now judgment debtors in this action. The underlying action commenced five and one-half years ago.

## Procedural Setting of the Recusal Motion

      The underlying action, commenced in March 2006, alleges securities fraud, pursuant to Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j (the "Exchange Act"), and Rule 10b-5 of the Securities and Exchange Commission, promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), as well as common law fraud and breach of fiduciary duties. The defendants, North Fork Preserve, Inc. ("NFP Inc.") and North Fork Preserve, Co. ("NFP Co."), operate a private hunting preserve on approximately 300 acres of vacant land in Riverhead, New York. Defendant Myron Kaplan and Robert Krudop - the latter now deceased - acquired the property, consisting of 333 acres, in 1981. In 1982, the principals formed the two business entity

defendants and conveyed 200 acres to NFP Inc. in exchange for seventy-five shares of NFP Inc. and other consideration. NFP Co. leased the remaining 133 acres to NFP Inc.

In order to raise capital to develop the property as a private hunting preserve, in 1984 NFP Inc. issued a Private Offering Memorandum and thereafter it began to operate as a members-only hunting preserve and has so functioned ever since. The plaintiff, Libaire, purchased one share in 1988. The private members pay annual dues in exchange for use of the hunting preserve facilities. The amount of said fees are set by the NFP Inc. Board of Directors on an annual basis.

The federal securities fraud claim, pursuant to Section 10(b) of the Exchange Act and Rule 10b-5, was dismissed for a number of reasons: (1) the statute of limitations; (2) such an action does not lie based on allegations of mismanagement; and, (3) the payment of annual membership dues is not a security. (Report and Recommendation of Boyle, M.J. dated Jan. 17, 2008 ("R&R"); Mem. and Order of Hurley, J., dated Mar. 24, 2008 ("Mar. 24, 2008 Mem. & Order").)

In addition to dismissal, the undersigned also recommended the imposition of sanctions - consisting of counsel fees, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 et seq., on the ground that the federal securities claims were frivolous. (R&R at 20-26.) This was adopted by Judge Hurley. (Mar. 24, 2008 Mem. & Order at 3-4.) A subsequent Report and Recommendation, dated September 26, 2008, found reasonable attorney's fees in the amount of $79,837.87 should be assessed against the plaintiff, Libaire, and his counsel, Stein, as the amount of attorney's fees and expenses incurred by defendants in connection with the frivolous action. This amount was also adopted by Judge

Hurley. (Mem. and Order of Hurley, J., dated May 22, 2009.) The district court judgment was sustained on appeal in an unpublished opinion, dated October 6, 2010. See Libaire v. Kaplan, 395 Fed. Appx. 732, 2010 U.S. App. LEXIS 20594 (2d Cir. 2010).

By Order dated February 1, 2011, the Court of Appeals granted appellees' motion for attorney's fees and costs as sanctions against plaintiff-appellant, Libaire, and his counsel, Stein and Altman, for filing a frivolous appeal. The case was remanded to the District Court to enter "an order . . . in the appropriate amounts." (Order of 2d Cir. Court of Appeals, dated Feb. 1, 2011.)

By Order dated January 19, 2011, in a Memorandum Opinion and Order, the undersigned denied counsel Stein's motion to quash the information subpoena relating to the defendants' efforts to conduct post-judgment discovery to locate Stein's assets. The judgment debtor, Stein, was directed to comply with the subpoena within fifteen (15) days. This was affirmed by Judge Hurley in an Order dated February 1, 2011.

On February 15, 2011, Judge Hurley directed the judgment debtors, Libaire and Stein, to show cause why they should not be held in contempt for failing to comply with defendants' post-judgment subpoena to discover assets.

By Report and Recommendation dated June 17, 2011, the undersigned recommended - after full briefing on the sanctions imposed by the Court of Appeals for pursuing a frivolous appeal - that defendants be awarded an additional sum of $83,557.74 for reasonable attorney's fees and costs.[1]

---

[1] Objections were filed by plaintiff's counsel, Stein and Altman, who filed a notice of appearance on December 18, 2009.

On July 20, 2011, in a forty-three page letter application addressed to Second Circuit Chief Judge Jacobs, Eastern District Chief Judge Amon and District Judge Hurley, Stein sought my recusal. In responsive correspondence, dated July 22, 2011, addressed to Stein, with courtesy copies to Judges Jacobs and Amon, Judge Hurley, in relevant part, stated:

> [t]o the extent that you believe that Judge Boyle should recuse from the case, a motion to that effect should be addressed to him with notice to opposing counsel, the resolution of which would be subject to the normal appeals process.

(Letter from Hurley, J. to Stein, M., dated July 22, 2011.) Stein, in August 2011, filed the same letter application with me. I denied the plaintiff's application, without prejudice to renewal by formal motion, supporting affidavits and memorandum of law on notice to all parties in this action. (Order of Boyle, J. dated Aug. 22, 2011.)

By Order dated October 5, 2011, Judge Hurley directed counsel Stein to show cause, in writing, by October 14, 2011, why the Court should not (1) impose a judgment against him for contempt fees thus far accrued and (2) incarcerate him until such time as he complies with the underlying subpoena. The Court scheduled a hearing for October 27, 2011, at which Stein was directed to appear.

By Order dated October 20, 2011, I denied the application by Stein seeking my recusal, without prejudice to renewal, because, while Stein made reference to an "accompanying Memorandum of Law," none had been filed.

On October 20, 2011, plaintiff Libaire and Stein sought an order to show cause from Judge Hurley seeking my disqualification "ab initio." A special request was made in the accompanying memorandum of law that the motion not be referred to me.

By Order dated October 24, 2011, Judge Hurley found that "[t]o the extent that Stein intends for this motion to address the Court's Order to Show Cause, the Court finds the submission wholly unresponsive." (Order of Hurley, J., dated Oct. 24, 2011 at 1.) With respect to Stein's efforts to have the motion for recusal heard in the first instance before him, Judge Hurley noted that the language of 28 U.S.C. § 455 requires the motion to be addressed to the judge sought to be recused. Accordingly, Judge Hurley construed "the submission as a motion to disqualify Judge Boyle pursuant to 28 U.S.C. § 455, presently before him for consideration."[2] (Id. at 2.) The court further noted that "the recusal motion before Judge Boyle will not affect the contempt hearing scheduled for October 27, 2011."[3] (Id.)

This is the procedural setting in which plaintiff Libaire and Stein seek my recusal pursuant to 28 U.S.C. § 455(a) and (b). The recusal application is based on Stein's declaration consisting of approximately 2000 pages of exhibits, forty-two pages of declarations by Stein, plaintiff Libaire and Libaire's son, and a fifty-two page memorandum of law.

---

[2] I have considered the recusal application to be before me since October 20, 2011. Although it does not contain a notice of motion, contains a brief in excess of the limits in my individual rules and also was filed in violation of my bundle rule, I chose to address the merits of the application at this time rather than on November 16, 2011, as requested in the movants' untimely Notice of Motion received today. Moreover, due to the frivolous nature of this application, I am deciding the application without any response by the defendants, who have already incurred expenses and delays in the defense of this action and pursuing their rights as judgment creditors.

[3] At the hearing on October 27, 2011, Stein agreed to provide all records sought and to appear at a deposition at the offices of defendants' counsel on November 17, 2011. The court suspended the hearing, pending the production of discovery materials by Stein. The court further directed full compliance with the outstanding subpoena by November 10, 2011 and attendance at a deposition at the offices of the judgment creditors' counsel, Rosenberg, Calica & Birney, LLP, in Garden City, New York. In the event of non-compliance by Stein, the contempt trial is scheduled to be held on December 2, 2012. (Order of Hurley, J., dated Oct. 31, 2011.)

## DISCUSSION

A.   Legal Standard for Recusal

28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section (b) of the recusal statute sets forth specific situations in which recusal is warranted, particularly mandating recusal "[w]here [the judge] has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3). The ultimate inquiry under Section 455 is whether "a reasonable person, knowing all the facts, [would] conclude that the . . . judge's impartiality could reasonably be questioned." United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992). Disqualification is not required where a case involves "remote, contingent, indirect or speculative interests." Id.

B.   The Motion

1.   The Merits

Distilled to its essence, the movants note that in 1991, the County of Suffolk contracted and later acquired the development rights to fifty acres of property belonging to North Fork Preserve, Inc. under a Suffolk County program to protect farmlands from development - known as the Suffolk County Farmland Preservation Program.[4] See Suffolk County Code, ch. 8

---

[4] Under this program, the owner retains title to the property and conveys the development rights to the County. The owner further agrees that any future use of the property is limited to agricultural purposes.

-6-

(entitled "Development Rights to Agricultural Lands"). I served as the County Attorney of Suffolk County during the period January 1988 to December 31, 1991.

The contracted closing on the fifty acres of development rights took place more than twenty years ago, in 1991 - at a time when real estate acquisitions had been transferred from a free-standing department within county government to a division of the Office of the County Attorney. Thus, the director of the real estate division was under my direct supervision, of course, as was the assistant county attorney who, according to the movants' submissions, drew up the papers and attended the closing. I had no personal involvement in the transaction, which, according to the voluminous exhibits submitted on the motion, reportedly related to a contract of purchase that had been negotiated by the parties in 1986 - some twenty-five years ago and twelve years before I took office. At the time of my tenure as County Attorney, there were approximately fifty attorneys employed by the office. There was nothing notable about the acquisition.

As County Attorney, I was the chief legal officer of Suffolk County. In that capacity, I represented the County of Suffolk and its officers and employees in all litigation and non-litigation matters. I was not a policymaker. The Suffolk County Legislature was responsible for the enactment of all county laws and resolutions, including the Farmland Preservation Program, under which the acquisition was made. I served at the pleasure of the then County Executive, Patrick Halpin, who appointed me. I served for one four-year term, as did he. The Farmland Preservation Program was one of the most successful programs in the country. It was enacted during the tenure of former County Executive John Klein, sometime in the early 1970's, and is largely responsible for the preservation of the North and South Forks of Long Island and the

establishment of vineyards in those areas of the county.

It is noted that the acquisition of development rights on fifty acres of defendants' property has absolutely nothing to do with the issues raised in the underlying securities action and provides no basis for me to disqualify myself. I had nothing to do with the selection of the defendants' property for inclusion in the program, nor have I had any involvement in any negotiations or acquisition of the property by the Suffolk County Water Authority or under the Suffolk County Drinking Water Protection Plan, referenced in movants' papers.

I left office on January 1, 1992 and returned to private practice at that time. While in private practice, I had no involvement of any kind with any of the parties or property owned by the defendants in this action. Contrary to the movants' speculation, I did not track the dealings of the defendants vis-a-vis the County of Suffolk and/or the Suffolk County Water Authority in the ensuing years since I left county office.

In July 1995, I joined the federal judiciary as a federal magistrate. I at no time have had any affiliation or communications with the Suffolk County Water Authority or any of its officers and directors (with the exception of paying our monthly water bill). The Suffolk County Water Authority is a municipal entity created by the New York State Legislature and is separate and distinct from the County of Suffolk. See N.Y. Pub. Auth. Law §§ 1074-1092 (entitled "Suffolk County Water Authority Act"). I have never represented the Suffolk County Water Authority as its counsel. The paranoid imputation of knowledge and behind the scenes control of events relating to the defendants during and after my service in the Office of the County Attorney are devoid of any connection to reality.

2. <u>The Timeliness of the Motion</u>

The materials referenced in movants' 2000 pages of exhibits appear to be matters of public record, which also raises the issue as to the untimeliness of this motion and brings into sharper focus the underlying basis for the application. Although there is no express provision in 28 U.S.C. § 455 mandating that a party move for recusal in a timely fashion, this requirement has been effectively read into the statute. See <u>In re IBM Corp.</u>, 618 F.2d 923, 932 (2d Cir. 1980). It is well-settled that a party seeking recusal must raise its claim at the "earliest possible moment after obtaining knowledge of facts demonstrating a basis for such a claim." <u>Apple v. Jewish Hosp. and Med. Ctr.</u>, 829 F.2d 326, 333 (2d Cir. 1987). Untimeliness in seeking recusal may constitute the basis for finding an implied waiver of the right to seek it. See <u>United States v. Bayless</u>, 201 F.3d 116, 127 (2d Cir. 2000).

The decision whether to grant or deny a recusal motion is a matter confided to the court's discretion. See <u>id.</u> A number of factors must be examined when assessing the timeliness of a motion for recusal, including "whether: (1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay." <u>Id.</u> at 334.

There are two underlying concerns that prompt this rule of timeliness. First, judicial resources should not be wasted. See <u>id.</u> A prompt application affords the judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate to take. See <u>In re IBM Corp.</u>, 45 F.3d 641, 643 (2d Cir. 1995). Second, "a movant may not hold back and wait, hedging its bets against the eventual outcome." <u>Apple</u>, 829 F.2d at 334. A

prompt application for recusal avoids the risk that the party is holding back its application as a "fall-back position" in the event there are adverse rulings on the pending matters. In re IBM, 45 F.3d at 643. This appears to be what happened here.

As noted below, I have been a judicial officer assigned to this action since 2007. Having lost the motion for summary judgment, which was affirmed on appeal with the added finding of prosecution of a frivolous appeal by the Court of Appeals, and movants' counsel now facing criminal contempt and possible incarceration, this appears to be the last desperate gasp of a losing litigant and his counsel. The acquisition of development rights in 1991 on the defendants' hunting preserve provides no basis for recusal. Nor do any acts by others after 1991 - in which I have had no involvement - provide any basis for recusal.

Lastly, it is noted that knowledge gained from a judge's discharge of his judicial function is not a ground for disqualification under 28 U.S.C. § 455(b)(1). See Katsaros v. Cody, 744 F.2d 270, 283 (2d Cir. 1984); see also Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437 (2d Cir. 2005). This is true with respect to all matters relating to my handling of this action.

Accordingly, the application for recusal, pursuant to 28 U.S.C. § 455(a) and (b), is denied.

C. Random Selection in this Action

The movants suggest that there is impropriety in my involvement in this action right from the outset. With respect to my assignment to this matter, I have attached to this Order, as an appendix, the Memorandum by Magistrate Judge Michael A. Orenstein, dated December 5, 2007, addressed to the Clerk of the Court, Robert Heinemann that led to my random assignment to this

action. Reference is made to this memorandum on the docket sheet entry dated December 12, 2007, which states:

> Magistrate Judge E. Thomas Boyle added. Magistrate-Judge Michael L. Orenstein no longer assigned to case. (As per memorandum dated 12/5/2007 to Robert C. Heinemann from Magistrate Judge Michael L. Orenstein) Motions referred to E. Thomas Boyle. (Marziliano, August) (Entered: 12/10/2007)

The referenced memorandum from Magistrate Judge Orenstein states:

> SUBJECT: Reassignment of Libaire v. Kaplan
> CV 06-1500 (DRH)
>
> DATE: December 5, 2007
>
> In view of the fact that no person or lawyer has made an appearance before me in this action and that I have not conferenced this action, I respectfully request <u>reassignment</u> of this action <u>in the ordinary cause of business as it falls within the spirit of my memorandum regarding assignment of case types in 2006.</u>

(Mem. of Orenstein, M.J. to Heinneman, R. dated Dec. 5, 2007 (emphasis in original)).

Judge Orenstein had retired and was on "Recall" at the time that the memorandum was written. I would infer from the above memorandum that the referenced 2006 memorandum "regarding assignment of case types" indicated that Judge Orenstein no longer wished to take securities actions. I find the remarks falsely imputed to me - that Judge Orenstein was "too old" to handle such cases - somewhat puzzling. I am older than he is.

For all of the foregoing reasons, the request to disqualify is devoid of any merit.

## CONCLUSION

For the foregoing reasons, movants' application for is denied.

**SO ORDERED:**

Dated: November 3, 2011
      Central Islip, New York

                                              /s/ E. Thomas Boyle
                                              E. THOMAS BOYLE
                                              United States Magistrate Judge

# *MEMORANDUM*

TO: ✓ Robert C. Heinemann
Clerk of Court

FROM: Michael L. Orenstein 
U.S. Magistrate Judge

SUBJECT: Reassignment of Libaire v. Kaplan
CV 06-1500 (DRH)

DATE: December 5, 2007

In view of the fact that no person or lawyer has made an appearance before me in this action and that I have not conferenced this action, I respectfully request <u>reassignment</u> of this action <u>in the ordinary cause of business as it falls within the spirit of my memorandum regarding assignment of case types in 2006.</u>

Boyle