UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JOHN H. LIBAIRE, Jr.,

       Plaintiff,

                                           **ORDER**
      -against-                        **06 CV 1500 (DRH)(ETB)**

MYRON KAPLAN, JANET KRUDOP,
NORTH FORK PRESERVE, INC. and
NORTH FORK PRESERVE, CO.,

       Defendants.
-------------------------------------------------------------X
**HURLEY, Senior District Judge:**

The following Order addresses a number of issues that remain pending in this action.

    **I.**    SATISFACTION OF THE JUDGMENT AND ONGOING CONTEMPT LIABILITY

       At a hearing held on December 2, 2011, the parties stipulated on the record that the judgment debtors had remitted two checks in satisfaction of the judgment entered in this case: one for the principal and a second for the interest accrued. Prior to these payments, a dispute arose as to the amount of interest owed. (*See* documents 177, 179.) Specifically, the parties disagreed whether the interest began accruing on the date of entry of the initial judgment on May 22, 2009, or upon the entry of the second amended judgment on January 25, 2010. (*Id.*)

       Although the judgment debtors paid the higher interest amount, or $1,229.25, reflecting the interest that had accrued since the earlier judgment date, or May 22, 2009, (docket no. 181 at 7), they nevertheless tendered such payment with the caveat that "it can well be argued that defendants' interest calculation is awry," and that the payment is made "with full reservation of rights," (*id.* at 3).

To the extent that the judgment debtors still maintain their position as to the purported amount of interest due and consider this an open matter, the Court shall briefly address the issue here. A review of the two judgments in this case reveals that the second amended judgment altered the original judgment only to the extent that it clarified that the state law causes of action were dismissed *without* prejudice; the amount of the original judgment did not change. The interest on the judgment therefore began to accrue on the date of the original judgment, May 22, 2009. *See Goodrich Corp. v. Town of Middlesbury*, 311 F.3d 154, 178 (2d Cir. 2002)(remanding for a calculation of post-judgment interest from the date of the original judgment, rather than the amended judgment which added only declaratory relief); *see also Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 55 (2d Cir. 1998)("[P]ost-judgment interest commences from the date a judgment is ascertained in a meaningful way and supported by the evidence.")(internal quotes and alterations omitted)(quoting *Andrulonis v. United States*, 26 F.3d 1224, 1233 (2d Cir. 1994)).

As the judgment debtors have now satisfied the judgment in this case, the subpoena issued to enforce that judgment, and which was the subject of prior contempt proceedings, has been rendered moot. Mitchell Stein ("Stein") is therefore relieved of any contempt liability related to the subject subpoena that might otherwise have been imposed beginning on October 27, 2011. (*See* Order dated 11/18/11, docket no. 178 ("Contempt Order").) Stein, however, is not relieved of the contempt liability previously incurred between March 19, 2011 and October 26, 2011, as addressed below.

## II.    STEIN'S PRIOR CONTEMPT LIABILITY

On March 14, 2011, the Court found Stein in contempt, pursuant to Fed. R. Civ. P. 45(e), for failing to abide by defendants' subpoena, which was originally issued as part of their effort to enforce the judgment entered in this case against Stein and his fellow judgment debtor, John

Libaire. The Contempt Order, however, gave Stein until March 18, 2011 to purge his contempt and respond to the subpoena, after which point a penalty of $200 per day would begin accruing for each day that Stein continued to disobey the Court's orders to comply. (Contempt Order at 3.) Despite a finding of contempt and the imposition of this daily fee, Stein failed to heed the Court's Contempt Order for more than seven months after it was issued.

As a result of this protracted period of noncompliance, the Court ordered Stein on October 5, 2011 to show cause why the Court should not, *inter alia*, incarcerate him until such time as he complies with the underlying subpoena. (Order dated October 5, 2011, docket no. 147.) The Court held a show-cause hearing on October 27, 2011. Faced with the prospect of incarceration, Stein produced documents responsive to the subpoena at the hearing (*see* docket no. 161), and the Court thereby stopped the clock on any accumulating contempt fees. (See Order dated 10/31/11, docket no. 166.) Shortly thereafter, Stein paid the judgment, relieving him from any ongoing contempt liability. (*See* discussion *supra.*) During the prior 222-day period of non-compliance, however, Stein incurred a total of $44,400 in contempt fees.[1]

### a. Stein's Prior Contempt Liability Has Not Been Mooted

On November 18, 2011, the Court issued an Order directing Stein to give reason why it should not reduce the $44,400 in accumulated fees (hereinafter, the "per-diem total") to a judgment against him. (Docket No. 178.) In response, Stein argued that "satisfaction of the

---

[1] Defendants contend that this period of contempt lasted 223 days. However, the Court will not count the last day, October 27, 2011, as Stein purportedly responded to the subpoena on that day. The contempt period in question therefore lasted from March 19, 2011 to October 26, 2011 (inclusive), or 222 days. At $200 per day, the total contempt fees accumulated by Stein during this period amounts to $44,400. Stein, nevertheless, argues that the Court should not count days during the contempt period that fell on weekends and holidays because he could not have complied with the subpoena when the defendants' counsel's office was closed. (Docket No. 181 at 2, n.3.) However, the contempt Order did not cabin the penalty only to business days, and Stein was fully aware of this fact. If he did not want the fees to accumulate on days in which counsel's office was closed, he was free to comply with the subpoena on a prior working day. He chose not to do so.

underlying judgment moots jurisdiction over *all* collection efforts, including the underlying post-judgment subpoena and, logically, contempt as well."(Docket No. 180 (emphasis in original).)

However, as noted above, before Stein made any payments toward the judgment, he repeatedly failed to abide by the directives of the subpoena, as well as the clear Orders of this Court to comply with that subpoena. As a result, the Court found Stein in contempt on March 14, 2011.[2] (Docket No. 118.) Thereafter, Stein waited 222 more days before complying. It was only after Stein faced incarceration that he relented and paid the judgment in full – a gesture that that he now argues should "moot" a seven-month period of disobedience in which he flouted the authority of this Court.

Under Article III of the Constitution, this Court has jurisdiction only over "live cases and controversies." *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004). Although the Court's orders pertaining to the enforcement of the judgment have since been mooted through payment of that judgment, the Court retains the power to "determine collateral issues." *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132 (2d Cir. 2002)(permitting the imposition of Rule 11 sanctions, even though the district court lack subject matter jurisdiction to decide the underlying action)(citing *Willy v. Coastal Corp.*, 503 U.S. 131, 137-39 (1992)). Specifically, "[a] court may make an

---

[2] Neither party raised the issue, but for the edification of the reader, the Court held Stein in contempt without a hearing as none of the material facts related to Stein's contempt were in dispute. *See SEC v. Margolin*, No. 92 Civ. 6307 (PKL), 1996 U.S. Dist. LEXIS 11299 (S.D.N.Y. Aug. 8, 1996)("[N]o [contempt] hearing is required because in a case such as this, where there are no material facts in dispute, the requirement does not apply.")(citing *United States v. City of Yonkers*, 856 F.2d 444, 453 (2d Cir. 1988)). Stein was given the opportunity to, and subsequently did, brief the matter of his contempt. (*See* Order dated February 15, 2011, docket No. 111 (directing Stein to show good cause why he should not be held in contempt for failing to comply with the subpoena and the Orders of this Court);*see also* Stein's responses, docket nos. 112, 114, 117.) As stated in the Court's March 14, 2011 contempt Order:
> "Mr. Stein . . . does not dispute that he was ordered to comply with the subpoena by this Court and Judge Boyle. Nor does Mr. Stein challenge the clarity of those Orders, or deny that he has yet failed to comply in any respect. Rather, Mr. Stein repeatedly asserts his argument that the Court does not have the authority to enforce the subpoena because, he suggests, the Court lacks subject matter jurisdiction over the entire action."

(Order dated 3/14/11, docket no. 118.)

adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). This result squares with the purpose of civil contempt, *i.e.*, to act to "coerce" and "compel obedience to a lawful court order." *United States v. Grand Jury Witness (In re Grand Jury Witness)*, 835 F.2d 437, 440 (2d Cir. 1987).

Were the Court to accept Stein's argument here that his payment of the judgment retroactively "moots" his prior period of noncompliance, then civil contempt orders would necessarily lose their coercive effect. By way of illustration, suppose Stein decided to wait ten years before paying the judgment. Under Stein's theory, there would be no repercussions under the Contempt Order for violating the directives of the Court and imposing such a delay on defendants. The Court raised this same hypothetical when the parties appeared in Court on December 2, 2011. (Transcript of 12/2/11 Hearing at 12:8-9.) In response, Stein conceded that it was within the discretion of the Court whether to impose any or all of the sanction. (*Id.* at 10-13.) If the matter is indeed still within the Court's discretion, as Stein suggested, then it could not also be moot. In sum, Stein's subsequent payment of the judgment neither moots, nor excuses, his previous failure to comply with the Court's Orders.

### b. Stein's Is Not Otherwise Relieved of His Prior Contempt Liability

Next, Stein argues that by submitting a letter, with nearly 2,000 pages in exhibits, to myself and Chief Judges Amon and Jacobs seeking the recusal of Magistrate Judge Boyle from this case, and that by later submitting a nearly identical motion, he has acted "reasonably diligent and energetic in attempting to accomplish what was ordered." (Letter dated 11/28/11, docket no. 180 (quoting one of the requirements for holding a party in civil contempt)); *see EEOC v. Local*

*638,* 753 F.2d 1172, 1178 (2d Cir. 1985). Stein's submissions, however, do not demonstrate any such diligence in complying with the subpoena – a subpoena, the Court notes, which sought only the production of financial records and Stein's deposition, not payment on the judgment. Rather, the submissions reflect yet another attempt by Stein to attack the power of this Court to render the underlying judgment. Notably, during the 222-day contempt period, Stein appealed the March 14, 2011 Contempt Order to the Second Circuit only to have the appeal dismissed for his failure to prosecute the matter on appeal. *See* Second Circuit Mandate, Docket 11-1069-cv, dated 8/29/11(filed here as docket no. 142).

Finally, Stein argues that the contempt fees should not be reduced to a judgment for purportedly equitable reasons. He asserts, rather disingenuously, that by paying the original judgment this past November, he has created a "cost savings" for defendants, obviating the need for them to incur any further expense enforcing the judgment. This argument, of course, ignores the significant expenses already borne by defendants in collecting a judgment that was first entered on May 22, 2009, more than two and a half years ago.

Accordingly, the Court directs the Clerk of Court to enter judgment against Mitchell Stein in the amount of $44,400, payable to the Clerk of Court.

### III. THE CONTEMPT JUDGMENT AND DEFENDANTS' REQUEST FOR COMPENSATION

Defendants request that any contempt judgment against Stein be entered in their favor as compensation for the costs of the "contemptuous conduct, which [] caused defendants to spend in excess of $100,000 to try and enforce the judgment." (Docket No. 179 at 1.)

Courts impose sanctions for civil contempt for two purposes: "to coerce future compliance and to remedy past noncompliance." *Vuitton et Fils S. A. v. Carousel Handbags*, 592

F.2d 126, 130 (2d Cir. 1979)(citing *United States v. United Mine Workers*, 330 U.S. 258, 302-04, (1947)).  The primary purpose of the present Contempt Order, as Stein correctly points out (*see* docket no. 180 at 2), was to compel Stein to comply with the subpoena, not to compensate defendants.  Nevertheless, if the Court has "strong evidence" before it that the contemnor's conduct was "willful," then it "would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996); *see New York State NOW v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998); *see also Vuitton*, 592 F.2d at 130("The district court is not free to exercise its discretion and withhold an order in civil contempt awarding damages, to the extent they are established.").

The problem with defendants' request for compensation, however, is that it seeks remuneration for expenses that they incurred generally "in connection with the enforcement efforts from November 2009 through October 2011," (docket no. 179 at 6), rather than for damages arising from the contemptuous conduct itself.  Stated differently, the time frame set forth by defendants encompasses, in part, acts that occurred well before the period of contempt defined by the Court.

First, the Court's March 14, 2011 Contempt Order held Stein "in contempt for failing to comply with the defendants' subpoena and with the related Orders of this Court." (Contempt Order at 4.)  Although the subpoena at issue (dated June 21, 2010) was either the second (see docket no. 179 at 3) or third (see docket no. 89 at 1) subpoena issued to Stein for the purpose of enforcing the May 22, 2009 judgment, the Contempt Order referred solely to the June 21, 2010 subpoena.  Stein's contempt can therefore arise only from conduct related to and occurring subsequent to the issuance of such subpoena.

7

Second, the first of the "related Orders," as defined in the Contempt Order, that Stein violated leading up to his contempt was entered by Judge Boyle on January 19, 2011. That Order denied Stein's motion to quash and directed him to comply with the subpoena. Until that point—or, at least, since the time Stein served his motion to quash the subpoena on September 8, 2010 —Stein was not compelled to comply with the subpoena because his motion to quash was pending.

Therefore, the contemptuous conduct for which defendants now seek compensation actually began, at the earliest, following Judge Boyle's January 19, 2011 Order. However, in its February 4, 2011 Order, the Court upheld its February 1, 2011 Order, but granted Stein an extension until February 8, 2011 to comply with the subpoena. Therefore, the Court can only award compensation, as it relates to Stein's contempt, for conduct that occurred after February 8, 2011.[3]

It would appear from the record that the costs incurred by defendants after that date came in the form of attorney's fees necessary to have Stein held in contempt, likely beginning with the February 9, 2011 letter to the Court, in which defendants, *inter alia*, sought an order to show cause why the Court should not find Stein in contempt. (*See* docket no. 109.) Leave is therefore granted to defendants to make an application by February 24, 2012 to recover attorney's fees and costs related to Stein's contempt adjudication incurred on or after February 8, 2011. Defendants' application shall demonstrate that Stein acted "willfully" in disobeying the relevant orders of this Court. *See Weitzman*, 98 F.3d at 719 ("[W]hile willfulness may not necessarily be a prerequisite to an award of fees and costs [for prosecuting contempt], a finding of willfulness strongly supports granting them."). Stein's response, if any, shall be filed on or before March 16, 2012.

---

[3] This conclusion shall not be read to preclude defendants from seeking compensation under any other theory that may entitle them to the full relief they seek here.

Any fees or costs that may be awarded through this application shall be paid by Stein to defendants in addition to the $44,400 judgment payable to the Clerk of Court. *See Terry*, 159 F.3d 86 (imposing both non-compensatory civil contempt fines and attorney's fees for prosecuting the contempt motion).

As an aside, leave for defendants to so move is granted notwithstanding Stein's contention that any potential award would upset the "American Rule" on attorney fees. *See Herman v. Davis Acoustical Corp.*, 196 F.3d 354, 357 (2d Cir. 1999)("Despite the American rule against awarding attorney's fees, the Supreme Court has recognized that a court may assess attorneys' fees for the willful disobedience of a court order . . . as part of the fine to be levied on the defendant, or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . . These exceptions are unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations, unless forbidden by Congress."(quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)(internal quotation marks omitted)); *see Hall v. Cole*, 412 U.S. 1, 4-5 (1973)("Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require.")(internal citations and footnotes omitted).

### IV. THE JUDGMENT DEBTORS' PROPOSED MOTION

The judgment debtors have also made two requests for leave to move to vacate the judgment in this case. The first relates to Judge Boyle's November 3, 2011 Order denying their motion for recusal pursuant to 28, U.S.C. 455. Following the entry of that Order, the judgment

debtors moved for reconsideration. (Docket No. 172.) On the day Judge Boyle denied reconsideration, Stein filed a letter with the Court attaching a copy of a check in payment of the judgment principal and requesting a briefing schedule on a motion before this Court to disqualify Judge Boyle and to vacate the judgment under Rule 60(b). The grounds for this proposed motion to vacate include Judge Boyle's purported bias, and "the absence of subject matter jurisdiction (under, *inter alia*, the doctrines of "master of the claim," *Rooker-Feldman*, and *Bell*)." (Docket No. 174.) The judgment debtors renewed their request for a briefing schedule one week later, stating that if a motion schedule was not set, they "might be obliged to simply lodge objections to the Magistrate Judge's decisions [ ] by November 24, 2011 (to avoid a claim of untimeliness), and then bring separate motions, seriatim, by notice of motion." (Docket No. 177.)

Although the judgment debtors requested a briefing schedule prior to the close of the objection period (14 days from November 3, 2011, or November 17, 2011)[4] they nevertheless ultimately failed to file such objections. The judgment debtors claim that bypassing the process of objecting to Judge Boyle's Order under Rule 72, and addressing the matter instead as part of their anticipated Rule 60(b) motion would have been the "sensible" approach. (Docket No. 177.) The Court, however, never relieved the judgment debtors of their obligation to file timely objections. The judgment debtors, as indicated in their letters, were well aware that if the Court did not do so, their objections would "otherwise" be due 14 days later. (*See id.*) The Court sees no reason to heed to the judgment debtors' presumption that the Court would relieve them of their Rule 72 objection requirements, and therefore declines to alter the 14-day objection period *nunc pro tunc*. If the judgment debtors wanted to protect themselves against such an outcome,

---

[4] The judgment debtors insist that the 14-day objection period begins to run from the day Judge Boyle entered his Order on the motion for reconsideration, instead of the date of entry of the underlying Order, thereby setting November 24, 2011 as the date the objections would be due, not November 17, 2011. As the judgment debtors failed to file any objections prior to either date, and indeed at all, the Court need not address this issue.

10

they could have timely filed their objections; they did not. As the judgment debtors have failed to object to Judge Boyle's Orders regarding his recusal, they have waived any right to appeal from those Orders. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the [Magistrate Judge's non-dispositive] order not timely objected to."); *see also Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir. 1992)(relating the principle to magistrate judges' reports and recommendations).

The judgment debtors also seek to move to vacate the judgment on other grounds. Based on the representations in their letters, it is assumed that the judgment debtors intend to move pursuant to Fed. R. Civ. P. 60(b)(6), which permits a Court to vacate a judgment for any "reason that justifies relief."

"Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Motions under Rule 60(b)(6) in particular, are granted only where there exists "extraordinary circumstances" or "extreme hardship," *Ackermann v. United States*, 340 U.S. 193, 199 (1950); *Nemaizer*, 793 F.2d at 63, and must not "be used as a substitute for a timely appeal." *Id.* at 61. Furthermore, any 60(b) motion must be brought within a "reasonable time," Fed. R. Civ. P. 60 (c)(1). What constitutes a reasonable time is ascertained through "scrutiny of the particular circumstances of the case, and balancing the interest in finality with the reason for delay," *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir.), cert. denied, 464 U.S. 936 (1983). Regardless, it must be shown "that the [moving] party is faultless in the delay." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 393 (1993). Relief from a judgment may not be granted to one "who does not act with due diligence." *Questrom v. Federated Dep't Stores, Inc.*, 192 F.R.D. 128, 132 (S.D.N.Y. 2000).

With this backdrop in mind, the Court is wary of the judgment debtors' proposed Rule 60(b)(6) motion, as it would be brought more than two years after entry of the original judgment, and more than a year after the Circuit affirmed that same judgment. The judgment debtors are nonetheless free to file their motion no later than February 24, 2012. This proposed motion must demonstrate, *inter alia*, that the legal grounds for the relief sought have not already been addressed and decided in this case either by this Court or the Circuit.

In an effort to spare the defendants the further expense of responding to yet another motion, no opposition will be required. In the event that the Court is unable to dispose of the matter based solely on the moving papers, the Court will invite the defendants to brief the matter. In no event will the Court grant the judgment debtors the requested relief under Rule 60 without hearing from defendants first.

Given the magnitude of the sanction and contempt fees already imposed on the judgment debtors in this action,[5] the Court believes it is unnecessary to remind them of their obligations under Rule 11 in deciding how to proceed.

## CONCLUSION

For the above stated reasons, (1) Mitchell Stein is relieved of any contempt liability related to the subject subpoena that would have been imposed after October 26, 2011; (2) the Court directs the Clerk of Court to enter judgment against Mitchell Stein in the amount of $44,400, payable to the Clerk of Court, for contempt fees incurred between March 19, 2011 and October 26, 2011; (3) defendants may move for an award of attorney's fees related to the

---

[5] These fees currently total more than $220,000. A separate Order bearing the same entry date as the present Order imposes $83,557.74 in fees related to the judgment debtors' frivolous appeal to the Second Circuit.

12

adjudication of Stein's contempt by February 24, 2012;[6] and (4) the judgment debtors' proposed motion pursuant to Rule 60(b) shall be filed no later than February 24, 2012; no opposition to the Rule 60(b) motion is required, unless further directed by the Court.

SO ORDERED.

Dated: Central Islip, New York
       January 30, 2012                                               /s
                                                                     Denis R. Hurley
                                                                     Unites States District Judge

---

[6] Stein's response shall be due by March 16, 2012.